ABDELLA, Appellant, v. SMITH, d/b/a CIRCLE C. RANCH, Respondent.

*March 1—April 11, 1967.*

---

[13] Id. at 236.

394

For the appellant there was a brief and oral argument by *Peter J. Abdella* of Green Bay, *pro se.*

For the respondent there was a brief and oral argument by *Orville S. Luckenbach* of Shawano.

HEFFERNAN, J. The verdict of the jury in an equity action is advisory only, and it is within the discretion of the judge to follow the verdict or to ignore it. *Schneider v. Fromm Laboratories, Inc.* (1952), 262 Wis. 21, 24, 53 N. W. (2d) 737. The ultimate responsibility for decision is therefore upon the judge, and the standard to be used on appeal is the usual one employed when the appeal is from a finding of fact determined by a trial judge, *i.e.,* is the finding contrary to the great weight and clear preponderance of the evidence. *Kirchen v. Gottschalk* (1965), 26 Wis. (2d) 123, 126, 131 N. W. (2d) 885. Applying that standard, we conclude that the findings and judgment must be affirmed.

The burden of proof is, of course, upon the plaintiff, Abdella, that the odors and flies resulted from the un-

reasonable use that the defendant made of his land, and that these odors and insects were so offensive that they interfered with Abdella's right to the reasonable use and enjoyment of his property.

This court has defined a private nuisance as "an unreasonable interference with the interests of an individual in the use or enjoyment of land." *Hoene v. Milwaukee* (1962), 17 Wis. (2d) 209, 214, 116 N. W. (2d) 112. Nevertheless, the interference cannot be merely trivial. It "must create more than an inconvenience, and must be offensive to the person of ordinary and normal sensibilities." *Bie v. Ingersoll* (1965), 27 Wis. (2d) 490, 493, 135 N. W. (2d) 250. ". . . private nuisances require some substantial interference with the interest involved." Prosser, Law of Torts (3d ed.), p. 598, sec. 88.

We have no hesitancy in concluding that the redolent miasmas of which Abdella complains—the odor of manure and urine—and the plague of flies that infested his restaurant substantially interfered with the reasonable use and enjoyment of the property. There is a plethora of evidence to show that no person of normal sensibilities could reasonably have been expected to have eaten in such noisome surroundings. The testimony of the physician was sufficient to support a finding that the conditions existing at Abdella's drive-in were insanitary and posed a threat to the health of the occupants of the Abdella property and the patrons of the restaurant.

There is, however, little evidence to show that these conditions were caused by the conduct of Smith or the unreasonable use that he made of his land. True, there was evidence that some manure was deposited from time to time in Smith's nearby stableyard, and that the resultant aromas were wafted onto the Abdella premises, but there was also evidence that Abdella had tethered his own herd of riding horses only 150 feet away. There was testimony from which it may be adduced that the admitted odors came, at least in part, from the Abdella

horses. Moreover, the testimony was crystal clear that the flies were more attracted to Abdella's open garbage cans than they were to Smith's horses. There was testimony that the source of these flies—the area where they might propagate—was as likely to be Abdella's horses 150 feet away as the Smith horses that were closer. There was also testimony that the flies came from the lake-front area. Certainly, in view of this testimony, it was not contrary to the great weight and clear preponderance of the evidence for the trial judge to conclude that it was not the unreasonable use of the Smith property that prevented the full use and enjoyment of the Abdella property. The defendant, Smith, has the right to make reasonable use of his own property and to use his own land for whatever lawful purpose he please if he does not unreasonably interfere with the rights of others to use their property.

Prosser has pointed out this judicial balancing process:

"The defendant's privilege of making a reasonable use of his own property for his own benefit and conducting his affairs in his own way is no less important than the plaintiff's right to use and enjoy his premises. The two are correlative and interdependent, and neither is entitled to prevail entirely, at the expense of the other. Some balance must be struck between the two. The plaintiff must be expected to endure some inconvenience rather than curtail the defendant's freedom of action, and the defendant must so use his own property that he causes no unreasonable harm to the plaintiff. The law of private nuisance is very largely a series of adjustments to limit the reciprocal rights and privileges of both. In every case the court must make a comparative evaluation of the conflicting interests according to objective legal standards, and the gravity of the harm to the plaintiff must be weighed against the utility of the defendant's conduct." Prosser, Law of Torts, *supra*, p. 616, sec. 90.

In the instant case the reasonableness of the defendant's use of his land must be appraised in light of the nature of the area, the use permitted in that area in a

legal sense, the efforts made by the defendant to have his stableyard in a reasonably sanitary condition, and the effect that such use had on the right to use nearby property.

This was a predominantly rural area, and what would be a nuisance on the Capitol Square in Madison would not be a nuisance in the country. This court has said, quoting from *Euclid v. Ambler Co.* (1926), 272 U. S. 365, 388, 47 Sup. Ct. 114, 71 L. Ed. 303:

" 'A nuisance may be merely a right thing in the wrong place,—like a pig in the parlor instead of the barnyard.' " *Hutt v. Lamont's Service, Inc.* (1965), 27 Wis. (2d) 177, 181, 133 N. W. (2d) 734.

Nevertheless:

". . . pigs cannot be raised in the city, hence they must be raised on the farm. If they are raised there under conditions as clean and sanitary as can reasonably be attained considering the characteristics of the animal and the necessity for confinement in close quarters, the fact that odors from those quarters are carried abroad on the summer breeze will not make an actionable nuisance." *Clark v. Wambold* (1917), 165 Wis. 70, 71, 160 N. W. 1039.

We find that the evidence in this case clearly indicates that the Smith property was kept in a reasonably clean and sanitary fashion. The trial judge found that "the defendant took all the proper precautions and adopted all accepted and modern methods to eliminate flies and hold odors natural to stables to the minimum degree of their offensive odorous propensities." The testimony of Doctor Sebasta indicated that approved fly control methods were used and were effective, and that horse droppings were removed several times a day. We conclude that, given the admittedly lawful nature of the business in which the defendant was engaged and the rural area in which both plaintiff and defendant were located, the

use made of the property, particularly in light of the continual efforts at sanitation and fly abatement, was not unreasonable.

Nor are we unmindful of the fact that Abdella built his restaurant knowing full well that the existing lawful use of the Smith land as a riding academy would reasonably preclude the establishment of a restaurant in the immediate vicinity. The trial judge referred to this as the "vindictive feature" of this case. Certainly, the facts of record could lead to the conclusion that Abdella built his restaurant for the very purpose of forcing an adjudication that the conduct of his competitor in the stable business was a nuisance. We need not come to that conclusion on this appeal. However, this is a matter before a court of equity, and we cannot look with favor on one who knowingly commenced a restaurant business in an area that was being used to stable over 50 horses. A plaintiff, of course, is not *ipso facto* barred from relief in the courts merely because of "coming to the nuisance," but it is a factor which bears upon the question of whether the plaintiff used his land reasonably under the circumstances. See Prosser, *supra,* page 632, sec. 92; Walsh on Equity, page 192. We must conclude that his determination to use the land for restaurant purposes—at least of the drive-in type that he built—was an unreasonable use under the circumstances.

On the basis of the record before us on appeal, it is apparent that it was not contrary to the great weight and clear preponderance of the evidence for the trial court to conclude that neither the location nor the operation of the defendant's riding stables constituted a nuisance.

*By the Court.*—Judgment affirmed.

HANSEN, J., took no part.