FRANK VOLPINTESTA, Corporation Counsel Kenosha County
You have asked my opinion on several questions concerning the power of the court assigned to exercise jurisdiction under Children's Code, ch. 48, Stats., to find juveniles in contempt of court. Before proceeding to your specific inquiries, it is necessary to briefly discuss the present status of the statutory contempt laws in this state.
Until mid-1979, the statutory law of contempt was contained in ch. 295, Stats. (civil contempt), and secs. 757.03 through 757.07, Stats. (criminal contempt). In 1979, by virtue of ch. 32, Laws of 1979, effective July 20, 1979, ch. 295, Stats., was renumbered as ch. 785, Stats., while secs. 757.03 through 757.07, Stats., remained unchanged. A larger revision, not relevant to your questions, had taken place by virtue of the enactment of ch. 401, Laws of 1975.
Throughout this period of change and revision the statutes continued to maintain the historical distinction between criminal and civil contempt, a distinction which has been the source of constant difficulty and confusion for judges and lawyers alike.State v. King, 82 Wis.2d 124, 262 N.W.2d 80 (1978); Comments,Contempt of Court: Some Considerations for Reform, 1975 Wis. L. Rev. 1117, 1119-1244.
Emerging from this confusion was a growing recognition of the need for reform. An objective of reform was elimination of this distinction, a distinction which was not made on the basis of the type of *Page 99 
conduct involved but was predicated upon the nature and purpose of the penalty imposed. Dobbs, Contempt of Court: A Survey, 56 Cornell L. Rev. 183, 247 (1971).
Wisconsin recognized this need for reform and has now responded to it. By virtue of ch. 257, Laws of 1979, effective May 10, 1980, the Legislature repealed and recreated the statutory law of contempt in this state which is now contained in ch. 785, Stats., entitled simply "Contempt of Court." This legislation removed the historical distinction between criminal and civil contempt.
Your first specific question asks: May a circuit court judge exercising jurisdiction over juvenile matters, under ch. 48 of the Wisconsin Statutes, find a juvenile in contempt of court? It is my conclusion that the answer to this first question is yes.
It has long been held that it is within the inherent power of a court to find persons in contempt in order that the court may see that its orders are carried out and that proper decorum is maintained in the court. State ex rel. Rodd v. Verage,177 Wis. 295, 187 N.W. 830 (1922) and In re Hon. Charles E. Kading,70 Wis.2d 508, 235 N.W.2d 409, 238 N.W.2d 63, 239 N.W.2d 297
(1975). As stated in 17 C.J.S. Contempt sec. 33: "While a party to an action may be more strictly accountable for contemptuous or contumacious acts performed in the course of the proceedings than a stranger, all persons who interfere with the proper exercise ofa court's judicial functions, whether parties or strangers, are punishable for contempt" (emphasis supplied; footnotes omitted).
Our supreme court has further held that even though such power to find persons in contempt of court is an inherent power of the court it is, nonetheless, subject to being reasonably regulated by the Legislature. In State ex rel. Attorney General v. CircuitCourt for Eau Claire County, 97 Wis. 1, 8, 72 N.W. 193 (1897), our court stated:
 Doubtless, this power may be regulated, and the manner of its exercise prescribed, by statute, but certainly it cannot be entirely taken away, nor can its efficiency be so impaired or abridged as to leave the court without power to compel the due respect and obedience which is essential to preserve its character as a judicial tribunal. *Page 100 
More recently the supreme court has affirmed that the Legislature may impose reasonable regulations upon the contempt power of the courts, and upon the exercise of that power by the courts, but only insofar as they do not render the contempt power ineffectual. King, 82 Wis.2d at 124.
The Wisconsin Legislature has enacted such regulations regarding the contempt powers of courts which are contained in the aforementioned ch. 785, Stats. Section 785.02, Stats., provides: "A court of record may impose a remedial or punitive sanction for contempt of court under this chapter." Subsequent sections, which will be referred to later in this opinion, set forth the sanctions which a court is authorized by statute to impose following a finding of contempt and the procedures to be used in arriving at such finding.
I find no indication in ch. 785, Stats., or in any other section of the statutes, that the Legislature intended to treat juveniles differently, in this limited area, than all other persons or to prohibit courts from finding juveniles in contempt. It appears to be generally held, apparently in the absence of any express legislative prohibition, that juveniles are generally subject to the same contempt power of a court as are other persons. In re Grand Jury Proceedings, 491 F.2d 42 (D.C. Cir. 1974).
It has also been held, by at least one court, that statutes which give juvenile courts exclusive jurisdiction over offenses committed by minors do not preclude a judge of a criminal branch of that court from holding a seventeen-year old girl in contempt for her refusal to answer questions before a grand jury which was in the process of investigating a homicide. Young v. Knight,329 S.W.2d 195 (Ky. 1959).
It has been stated that "Juvenile courts generally have the same power as other courts to punish for contempt." 47 Am. Jur. 2d Juvenile Courts, Etc. sec. 5 (footnote omitted). Therefore, I conclude that juveniles are generally subject to the same contempt powers and provisions of the courts as are other persons. *Page 101 
In your second question you ask what acts or conduct would form the basis for finding a juvenile in contempt of court if the answer to your first question is in the affirmative.
 Section 785.01, Stats., entitled "Definitions" provides:
(1) "Contempt of court" means intentional:
 (a) Misconduct in the presence of the court which interferes with a court proceeding or with the administration of justice, or which impairs the respect due the court;
 (b) Disobedience, resistance or obstruction of the authority, process or order of a court;
 (c) Refusal as a witness to appear, be sworn or answer a question; or
 (d) Refusal to produce a record, document or other object.
It is thus clear that, depending upon the particular circumstances involved, the above enumerated types of conduct may form the basis for a finding of contempt of court by a juvenile as well as by other persons. It also appears that such enumeration is not intended to be exclusive. In the Legislative Council's Notes contained in the legislation it was stated in part:
 The definition of contempt of court is intended to be broad and general. Wisconsin Statutes formerly included a lengthy list of acts which were included in the definition of criminal contempt (s. 256.03 (1975)). This list was shortened by ch. 401, Laws of 1975 (s. 757.03 (1977)). The intention of this new section is not to exclude any acts which were previously defined as contempt of court, but to make it more inclusive by being less specific and less wordy.
The note went on to state that scattered throughout the statutes are numerous other sections specifically stating that certain types of conduct may be punishable as contempt of court. In most cases it was felt that that other described conduct probably falls within the language of sec. 785.01, Stats., but that if it does not there is, expressly, no legislative intent to repeal the other sections. *Page 102 
Therefore, it is apparent that there is a wide range of possible grounds upon which a finding of contempt of court may be predicated depending upon the particular circumstances and acts or omissions involved, which must be determined upon a case-by-case basis.
Your third and final question asks: What sanctions are available to the court if the juvenile is found in contempt?
The sanctions which a court is authorized to impose following a finding of contempt of court are set forth in sec. 785.04, Stats. These sanctions are classified as remedial sanctions and punitive sanctions.
Although I perceive from your letter that the central focus of this question is actually narrower than at first appears, which will be discussed shortly, I set forth below for your assistance the entire spectrum of sanctions available to a court upon its making a finding of contempt, pursuant to ch. 785, Stats.
 785.04 Sanctions authorized. (1) REMEDIAL SANCTION. A court may impose one or more of the following remedial sanctions:
 (a) Payment of a sum of money sufficient to compensate a party for a loss or injury suffered by the party as the result of a contempt of court.
 (b) Imprisonment if the contempt of court is of a type included in s. 785.01(1)(b), (c) or (d). The imprisonment may extend only so long as the person is committing the contempt of court or 6 months, whichever is the shorter period.
 (c) A forfeiture not to exceed $2,000 for each day the contempt of court continues.
 (d) An order designed to ensure compliance with a prior order of the court.
 (e) A sanction other than the sanctions specified in pars. (a) to (d) if it expressly finds that those sanctions would be ineffectual to terminate a continuing contempt of court.
 (2) PUNITIVE SANCTION. (a) Nonsummary procedure. A court, after a finding of contempt of court in a nonsummary procedure under s. 785.03(1)(b), may impose for each *Page 103 
separate contempt of court a fine of not more than $5,000 or imprisonment in the county jail for not more than one year or both.
 (b) Summary procedure. A court, after a finding of contempt of court in a summary procedure under s. 785.03(2), may impose for each separate contempt of court a fine of not more than $500 or imprisonment in the county jail for not more than 30 days or both.
 (3) PAST CONDUCT. A punitive sanction may be imposed for past conduct which was a contempt of court even though similar present conduct is a continuing contempt of court.
It should be observed, according to the note following sec.785.04, Stats., that the sanctions are not mutually exclusive. Subsection (3) was enacted and included for the expressed purpose of making that proposition clear.
As I alluded to above, what I perceive to be the real focus of your third question is: When may a court of record, following a finding of contempt of court by a juvenile, impose the remedial sanction of imprisonment contained in sec. 785.04(1)(b), Stats., or the punitive sanctions of imprisonment contained in sec.785.04(2)(a) and (b), Stats.?
In general, it appears that the paramount consideration in determining whether to commit a juvenile to any kind of custodial facility is that of the child's welfare. "Commitments under the general terms of the statute are upheld where the best interest and welfare of the child seem to require it." See Annot., 45 A.L.R. 1533, 1534 (1926).
The corollary to that proposition is found at 1535 of the annotation where it is said: "Conversely, a commitment which disregards the best interest and welfare of the child, as a rule, it [sic] has not been upheld." In re Alley, 174 Wis. 85,182 N.W. 360 (1921), involved a juvenile trying to explode dynamite caps which had been abandoned in order to frighten other children. The prank resulted in a child being injured after picking up one of the dynamite caps. It was held under all of the circumstances in the case that commitment to a custodial *Page 104 
facility was not warranted as not being in the best interest of the child. See also 47 Am. Jur. 2d Juvenile Courts, Etc. sec. 32 ("Clearly, the interests of the child should be a dominant factor in determining whether or not the juvenile court should commit it to a correctional institution" (footnote omitted)).
The Wisconsin Legislature has expressly adopted this general policy in sec. 48.01(2), Stats.: "This chapter shall be liberally construed to effect the objectives contained in this section. Thebest interest of the child shall always be of paramountconsideration, but the court shall also consider the interest of the parents or guardian of the child and the interests of the public." With those general thoughts in mind, we move to the specific statutory provisions which govern holding juveniles in physical custody in this state.
The basic criteria for holding a child in physical custody are set forth in sec. 48.205, Stats., which, although lengthy, is set forth in full below because of its importance to this discussion.
 Criteria for holding a child in physical custody. (1) A child may be held under s. 48.207, 48.208 or 48.209 if the intake worker determines that there is probable cause to believe the child is within the jurisdiction of the court and:
 (a) Probable cause exists to believe that if the child is not held he or she will commit injury to the person or property of others or cause injury to himself or herself or be subject to injury by others;
 (b) Probable cause exists to believe that the parent, guardian or legal custodian of the child or other responsible adult is unavailable, unwilling or unable to provide adequate supervision and care; or
 (c) Probable cause exists to believe that the child will run away or be taken away so as to be unavailable for proceedings of the court or its officers or proceedings of the department for revocation of aftercare supervision.
 (2) The criteria for holding a child in custody specified in this section shall govern the decision of all persons responsible for determining whether the action is appropriate. *Page 105 
Sections 48.207, 48.208 and 48.209, Stats., discuss respectively places where a child may be held in nonsecure custody, criteria for holding a juvenile in secure detention and criteria for holding a child in a county jail. The latter section, sec. 48.209, Stats., which sets forth the criteria for holding a child in a county jail sets forth the criteria pursuant to which a county jail may be used as a secure detention facility.
Section 48.208, Stats., provides the criteria which must be used in determining whether a child may be held in a secure detention facility which is the type of facility which would be utilized if the child were ordered incarcerated for contempt. Those criteria are as follows:
 A child may be held in a secure detention facility if the intake worker determines that one of the following conditions applies:
 (1) Probable cause exists to believe that the child has committed a delinquent act and either presents a substantial risk of physical harm to another person or a substantial risk of running away as evidenced by a previous act or attempt so as to be unavailable for a court or revocation hearing for children on departmental aftercare. For children on departmental aftercare, the delinquent act referred to in this section may be the act for which the child was committed to a secured correctional facility.
 (2) Probable cause exists to believe that the child is a fugitive from another state or has run away from a secured correctional facility and there has been no reasonable opportunity to return the child.
 (3) The child consents in writing to being held in order to protect him or her from an imminent physical threat from another and such secure custody is ordered by the judge in a protective order.
 (4) Probable cause exists to believe that the child, having been placed in nonsecure custody by an intake worker under s. 48.207 or by the judge or juvenile court commissioner under s. 48.21 (4), has run away or committed a delinquent act and no other suitable alternative exists. *Page 106 
 (5) Probable cause exists to believe that the child has been adjudged or alleged to be delinquent and has run away from another county and would run away from nonsecure custody pending his or her return. A child may be held in secure custody under this subsection for no more than 24 hours unless an extension of 24 hours is ordered by the judge for good cause shown. Only one extension may be ordered by the judge.
It is apparent from a reading of those provisions that egregious, and in some instances potentially harmful, circumstances must exist before a child can be held in a secure detention facility, including a county jail being used as such a facility.
The most recent reported case which we have been able to find which discusses not only the authority of a court to find a juvenile in contempt but also the circumstances under which that juvenile may be imprisoned for that contempt is State ex rel.L.E.A. v. Hammergren, 294 N.W.2d 705 (Minn. 1980).
In that case, several juveniles, in separate lower court cases, were placed in secure detention facilities after being found in "constructive contempt of court" for failing to comply with the court's orders. The juveniles then petitioned the lower court for habeas corpus, which petitions were dismissed. The juveniles appealed the dismissal to the Minnesota Supreme Court.
The Minnesota Supreme Court found, as I have earlier concluded in this opinion, that juvenile courts do have the authority to find juveniles in contempt of court and to impose the sanctions which the court finds appropriate under the circumstances. The Minnesota court then went on to say: "But, given the Legislature's expressed disapproval of the practice of confining status offender juveniles in secure facilities, juvenile courts should not direct such confinement for contempt of court unless they first find specifically that there is no less restrictive alternative which could accomplish the court's purpose."Hammergren, 294 N.W.2d at 706-07 (footnotes omitted).
The Minnesota court went on to say, at 707-08:
 In light of the foregoing, we hold that only under the most egregious circumstances should the juvenile courts exercise *Page 107 
their contempt power in such a manner that a status offender will be incarcerated in a secure facility. If such action is necessary, the record must show that all less restrictive alternatives have failed in the past.
The United States Supreme Court has put forth the same general philosophy in dealing with sanctions for contempt of court, not just for juveniles but for all contemnors, in United States v.Wilson, 421 U.S. 309 (1975), when it said: "`"[T] he least possible power adequate to the end proposed"'" should be used in cases involving contempt of court. I thus perceive, as alluded to earlier, in secs. 48.205 and 48.208, Stats., a legislative object and purpose that courts order juveniles imprisoned only under the most egregious circumstances.
Those sections and the imprisonment sanctions contained in secs. 785.04(1)(b) and (2)(a) and (b), Stats., are to be considered in pari materia. As considered in regard to the questions at hand, all of those sections relate to the same purpose or object, that is, incarceration of persons, and must therefore be read together. That is to say, the imprisonment sanctions in the contempt statutes must be read together with, and in light of, the criteria for imprisonment which must be followed in determining whether to "imprison" a juvenile in ch. 48. See 2A Sands, Statutes and Statutory Construction, sec. 51.03
(4th Ed.).
Therefore, I conclude, based upon the foregoing, that while courts in this state have the authority to find juveniles in contempt of court, the sanctions of imprisonment provided for in sec. 785.04(1)(b) and (2), Stats., should be imposed only under the criteria contained in secs. 48.205 and 48.208, Stats., or in situations where the act of contempt is egregious and the imposition of less restrictive sanctions have already failed or would fail. It would be my further conclusion, based upon the foregoing, that courts may not order the imprisonment of juveniles as a disposition in a juvenile proceeding under the guise of exercise of its powers of contempt. For example, it would be my conclusion that a court could not imprison a juvenile under the guise of its contempt powers for being habitually truant from school unless the criteria set forth in sec. 48.208, Stats., are present, that is, the *Page 108 
courts cannot substitute imprisonment for contempt for appropriate dispositional orders covering status offenses under ch. 48, Stats.
BCL:JM