Andrew R. MOHR and Alice J. Mohr, his wife,
Plaintiffs-Respondents-Cross-Petitioners,†

v.

CITY OF MILWAUKEE, a municipal corporation,
Defendant-Appellant-Cross-Respondent,

Leroy J. HARRIS and Johnnie M. Harris, his wife, Defendants-Respondents and Cross-Appellants-Petitioners,

James D. COLLINS and Agnes J. Collins, his wife, Valecia Washington, Liddie Collins, Clara Carter, Globe Union Credit Union, a Wisconsin corporation, James Bruce, First Wisconsin National Bank of Milwaukee, a national banking association, St. Anthony Hospital, a Wisconsin corporation, Harley Davidson Credit Union, a Wisconsin corporation, Mid City Realty Co., Inc., a Wisconsin corporation, and State of Wisconsin, Defendants.

Supreme Court

*No. 80–406. Argued January 4, 1982.—Decided February 2, 1982.*

(Also reported in 315 N.W.2d 504.)

† Motion for reconsideration denied, with costs, on March 15, 1982.

For Leroy J. and Johnnie M. Harris there were briefs (in this court) by *John B. Werra* and *Patrick F. Brown* of Milwaukee, and oral argument by *Mr. Brown.*

For Andrew R. and Alice J. Mohr there was a brief (in court of appeals) by *Rakita & Rakita* of Milwaukee, and oral argument by *Richard J. Rakita.*

For the city of Milwaukee the cause was argued by *Michael A.I. Whitcomb,* assistant city attorney, with whom on the brief was *James B. Brennan,* city attorney.

WILLIAM G. CALLOW, J. This is a review of a March 17, 1981, published decision of the court of appeals[1] which reversed the judgment and order of Milwaukee County Circuit Court Judge Ralph G. Gorenstein which found the city of Milwaukee in contempt of a foreclosure judgment. In 1967 plaintiffs-respondents-cross-petitioners, the Mohrs (hereinafter mortgagees or plaintiffs), sold a DX service station/car wash, located in Milwaukee's inner city, to defendants-respondents-cross-appellants-petitioners, the Harrises (hereinafter mortgagors), and defendants, the Collins. The sale was subject to two mortgages: one to St. Francis Savings and Loan which was satisfied, and the other a purchase money mortgage to the plaintiffs which led to the controversy now before us. Harris and Collins operated the DX service station together, and although they remained co-owners, Harris withdrew from the joint operation of the station in the early 1970's, and Collins continued operating the station. The operation suffered from economically difficult times, and mortgage payments to the Mohrs became delinquent. On August 20, 1975, the Mohrs instituted a foreclosure action, naming as party defendants the Harrises, the Collins, and the city of Milwaukee,[2] which resulted in a judgment of foreclosure being entered on January 30, 1976, in the amount of $6,521. The judgment of foreclosure provided for a one-year period of redemption, and it contained the following permanent, prohibitory injunctive language central to this appeal:

"IT IS FURTHER ORDERED AND ADJUDGED that the *defendants, and all persons claiming under them,* be, and they hereby are, enjoined from committing waste upon said mortgaged premises and from doing any act that

---

[1] *Mohr v. Milwaukee*, 101 Wis. 2d 670, 305 N.W.2d 174 (Ct. App. 1981).

[2] The city of Milwaukee was named as a party defendant because of outstanding real estate taxes and as a judgment creditor against the Collins.

may impair the value of same, unless meanwhile said premises shall have been duly redeemed as provided by law." (Emphasis added.) [3]

A receiver was appointed, and immediately subsequent to the entry of judgment on January 30, 1976, he exercised control of the property by removing the Collins from the property and leasing the premises to a third party. This leasing arrangement terminated after a short time.

A lis pendens was filed, and the city received the following documents relative to the foreclosure action: Summons and complaint, notice of application for judgment and for appointment of a receiver, and notice of entry of judgment as required by sec. 806.06(3), Stats., 1975. The city notes it did not receive a copy of the *judgment* of foreclosure.

On September 15, 1976, the department of building inspection and safety engineering of the city of Milwaukee, pursuant to sec. 66.05(1)(a), Stats., 1975,[4] issued and

[3] Sec. 846.12, Stats., 1975. That statute provides that "The judgment may enjoin the defendants and all persons claiming under them from committing waste or doing any act that may impair the value of the mortgaged premises."

The language of this judgment is somewhat different from that posed in the Mohrs' complaint which prayed for relief as follows:

"WHEREFORE, plaintiffs demand judgment of foreclosure and . . . that the *defendant mortgagors* be enjoined from committing further waste on said premises or doing any other act that may impair the value of the same at anytime between the date of said judgment and the date of the sale of said premises." (Emphasis added.)

[4] Sec. 66.05(1)(a), Stats., 1975, provides:

"66.05 **Razing buildings; excavations.** (1)(a) The governing body or the inspector of buildings or other designated officer in every municipality, except in towns situated in a county of less than 15,000 population upon complaint of a majority of the members of the town board the circuit court, may order the owner of premises upon which is located any building or part thereof within such municipality, which in its judgment is so old, dilapidated or

served an order on the Harrises and the Collins requiring them within fifty-one days to "secure from entry, and rehabilitate or raze and remove" the improvements on the property. The order was not served on the receiver. Neither the receiver nor any of the parties to the foreclosure action filed a formal objection to the order or applied to the circuit court for a restraining order in accordance with sec. 66.05(3), Stats., 1975.[5] (All references in this opinion are to the 1975 Statutes unless otherwise indicated.)

has become so out of repair as to be dangerous, unsafe, insanitary or otherwise unfit for human habitation, occupancy or use, and so that it would be unreasonable to repair the same, to raze and remove such building or part thereof, or if it can be made safe by repairs to repair and make safe and sanitary or to raze and remove at the owner's option; or where there has been a cessation of normal construction of any building or structure for a period of more than 2 years, to raze and remove such building or part thereof. The order shall specify a time in which the owner shall comply therewith and specify repairs, if any. It shall be served on the owner of record or his agent where an agent is in charge of the building and upon the holder of any encumbrance of record in the manner provided for service of a summons in the circuit court. If the owner or a holder of an encumbrance of record cannot be found the order may be served by posting it on the main entrance of the building and by publishing as a class 3 notice, under ch. 985, before the time limited in the order commences to run."

[5] Sec. 66.05(3), Stats., 1975, provides:

"(3) Anyone affected by any such order shall within 30 days after service of such order apply to the circuit court for an order restraining the inspector of buildings or other designated officer from razing and removing such building or part thereof or forever be barred. Hearing shall be had within 20 days and shall be given precedence over other matters on the court's calendar. The court shall determine whether the order of the inspector of buildings is reasonable, and if found reasonable the court shall dissolve the restraining order, and if found not reasonable the court shall continue the restraining order or modify it as the circumstances require. Costs shall be in the discretion of the court. If the court finds that the order of the inspector of buildings is unreasonable, the inspector of buildings or other designated officer shall issue no

In November of 1976, several phone conversations occurred between the attorneys for the Mohrs and the Harrises and the city, resulting in the city agreeing on November 23, 1976,[6] to withhold razing the improvements on the property until the expiration of the redemption period *or* until after the sheriff's sale of the property.[7] The Harrises did board up the building as requested, although the city notes this was beyond the fifty-one day time period specified in the initial raze order. Following several telephone conversations between the mortgagors' attorney and the city and between the mortgagees' attorney and the city regarding the fact that the building was going to be razed, the building was razed on March 17, 1977, approximately two to three weeks before the Sheriff's sale.

Ten months following the razing of the building, on January 25, 1978, the Harrises instituted an independent tort action against the co-mortgagors (the Collins), the demolition contractor and the city alleging *inter alia* that the defendants tortiously caused the building to be razed. The circuit court in the tort action granted the Harrises a default judgment against their co-mortgagors on April 30, 1979. On June 19, 1979, the circuit court dismissed the tort action on the merits against the remaining defendants, concluding that the mortgagors' failure to challenge the raze order within the thirty-day

other order pursuant to the authority of this section in regard to the same building or part thereof until its condition is substantially changed. The remedies herein provided shall be exclusive remedies and anyone affected by such an order of the inspector shall not be entitled to recover any damages for the razing and removal of any such building."

[6] This agreement occurred after the statute of limitations in sec. 66.05(3), Stats., 1975, had run.

[7] The city was advised that the sheriff's sale would occur in February of 1977. The sale did not, in fact, occur until a later date.

statutorily prescribed limit[8] presented an absolute bar to the tort action.

On May 31, 1979, the Harrises petitioned for an order to show cause why the city should not be found in contempt, pursuant to sec. 295.01, Stats., 1975,[9] alleging the city violated the foreclosure judgment by razing the building. In January of 1980, the circuit court granted a judgment of contempt and awarded damages to both Mohrs and Harrises.[10]

---

[8] Sec. 66.05(3), Stats., 1975.

[9] Sec. 295.01, Stats., 1975, provides:

"295.01   **Contempt power of courts.**   Every court of record may find in contempt any person who disobeys any process or lawful order of the court, violates or neglects an official duty, or is otherwise guilty of misconduct, by which act the rights or remedies of a party in an action or proceeding pending or triable in such court or before a court commissioner for the same county may be impaired, impeded, defeated or prejudiced."

[10] The transcript of the proceedings before the Honorable Ralph G. Gorenstein reveals the following:

"*Mr. Pitts* [Assistant City Attorney]: Even though the City was not served with the Judgment, you are saying they had actual notice?

"*The Court:* Even though the City was not served with the Judgment, like anyone else who is a party to a lawsuit and been served, they are charged with the notice contained therein, especially in this case.

"*Mr. Pitts:* That impairs the building inspector—

"*The Court:* We are not going to hold a discussion on this, Mr. Pitts. The City is charged, especially in this case, because in this case a building inspector has come down and inspected it, the file. They have had discussions with the various attorneys on the case. They knew that Judgment had been entered. They knew or should have known it was a standard type of Judgment. Not only that but they had agreed to hold the matter and were not following the strict provisions of 66.05. Why they didn't wait the two extra weeks and eliminate the problem is beyond my comprehension. I don't understand it. Besides the fact that somebody lost sight of what the liabilities of the city could be in that situation and forgot about the hold or were so anxious to allow this contract to be carried out that they allowed the contractor to go ahead with it. The

The court of appeals reversed, finding that the city was not a "defendant" under the foreclosure judgment, and hence it was not bound by the permanent injunction. The court of appeals held that the remedy established in sec. 66.05(3), Stats., was exclusive, and by failing to challenge the reasonableness of the raze order, the Mohrs and Harrises waived their rights to a remedy. The court of appeals further found that the city could not have committed waste[11] because (1) it was merely a lien-

Court finds that the city has effectively waived the provisions of 66.05. As a matter of fact, the injunction came before that time.

"The Court finds that in a case where there is an injunction in the foreclosure before the city can start a 66.05, they must apply to the Court for relief against that injunction. Otherwise, the Court's order has virtually no effect, even if they are run of the mill standard boiler plate orders. The City is not beyond the kin [sic] of the law. They must stay within the law and operate as any other party to a lawsuit. I think what Mr. Rakita said is true: had the City come in here and asked two or three weeks before the Sheriff's sale whether or not they could have the provisions of the injunction waived, the Court would not have allowed it and told the city to wait the two weeks; and I think if they would have asked you [the Assistant City Attorney], Mr. Pitts, you would have told them to wait the two weeks, unless there was an immediate danger which none has been shown. On top of that, there was an informal agreement and my reading of the gist of the situation is probably that this is a normal way of handling it with the building inspector's office, rather than go through the normal route of 66.05 they call them and see if they will hold them; in this case they agreed to hold them and the parties to this case relied upon that agreement with the City through the building inspector's office to their detriment and included in the notes, the building inspector's notes, said there must have been some misunderstanding. Obviously there was, somebody got anxious. So, there are a lot of grounds and they are obviously equitable. I find that the City has violated the injunction of the Court. The Court finds the City in contempt of this Court and liable to pay the actual damages of the parties involved as they have suffered from the violation of the injunction."

[11] The three elements of waste analyzed by the court of appeals are defined in *Pleasure Time, Inc. v. Kuss,* 78 Wis. 2d 373, 381, 254 N.W.2d 463 (1977): "Waste may be defined as the unreasonable

holder and not an owner of a possessory interest in the property, and (2) razing the building did not substantially diminish the value of the property because "[a] municipality's decision to raze implies that the building's deterioration is so severe that only its destruction can ensure the public safety."[12] The court of appeals did not find any estoppel argument (due to delay in demolition) against the city valid because the mortgagors and mortgagees could not have reasonably relied[13] upon the city's actions in delaying demolition "in light of clear statutory command" of sec. 66.05(3). 101 Wis. 2d at 679. Because we find that the city of Milwaukee was a proper party defendant to the foreclosure judgment and the city was bound by the foreclosure court's permanent injunction not to impair the value of the property, we reverse the court of appeals.

We perceive the pivotal issue before us as follows: Was the city of Milwaukee properly held in contempt for its actions in razing the building in violation of the permanent injunction issued by the foreclosure court which prohibited the impairment of value of the foreclosed premises? We hold that it was.

The city of Milwaukee in its brief before this court "contends that the threshold question to be addressed is whether the city had sufficient notice of the injunctive language in the foreclosure judgment to be held in contempt for the alleged violation of the injunction." The city correctly cites sec. 295.03(2), Stats., 1975, for the proposition that the party prosecuting a civil contempt

conduct by the owner of a possessory estate that results in physical damage to the real estate and substantial diminution in the value of the estates in which others have an interest. Whether a particular act is waste depends on the circumstances." (Citations omitted.)

[12] *Mohr v. Milwaukee*, 101 Wis. 2d at 675.

[13] *See: Chicago & North Western Transportation Co. v. Thoreson Food Products, Inc.*, 71 Wis. 2d 143, 154, 238 N.W.2d 69 (1976).

action bears the burden of proof "by a preponderence of the evidence" that the city is guilty of misconduct, and it further contends that the plaintiffs have failed in their burden to prove the city had *actual knowledge* of the injunctive language. The city argues that, although it received a copy of the complaint and a notice of entry of judgment in the foreclosure action, it did not receive a copy of the judgment. Because the injunctive language prayed for in the complaint pertained to *defendants-mortgagors*, and the city did not receive a copy of the judgment which was not limited to mortgagors, the city asserts that it was not aware that the judgment enjoined all "defendants."[14]

The city further argues that, even if it had actual notice, it should not be bound by the injunction because the injunction should be read to apply to only nonnominal defendants. The city argues, citing sec. 841.03, Stats., 1975,[15] which establishes parties to be named as defendants, that although "[t]he prohibitive language of the judgment was addressed to the 'defendants' . . . this is not to say the city was a 'defendant' within the meaning and the intent of the judgment." The city contends that because it would obtain its outstanding real estate taxes regardless of its presence in the lawsuit, it should not be considered a defendant within the meaning of the judgment.

The city further argues that it cannot commit waste because only a party who has a possessory interest in the property can commit waste. Additionally, the city argues that the building inspector's decision to raze the

---

[14] *See* n. 3 *supra* and accompanying text.

[15] Sec. 841.03, Stats., 1975, provides:

"841.03 **Defendants.** Persons claiming interests adverse to the plaintiff which interests the plaintiff wants affected by the judgment *shall be named* as defendants; other persons with interests in the described property *may be named* as defendants." (Emphasis added.)

improvements to the property is evidence of the fact that those improvements had no value. Therefore, the city could not have impaired the value of the premises because, according to the city, the razed improvements had no value.

Lastly, the city argues that the remedy established in sec. 66.05 (3), Stats., is *exclusive* because the city's police power is derived from that statute, and it supersedes the foreclosure court's injunction. However, the city attorney at oral argument conceded that ". . . had the parties gone before the foreclosure court, noticed the city on a motion to restrain the city from effectuating any razing of the property pending disposition of the sheriff's sale, and Judge Gorenstein would have granted that motion and restrained us from so doing, that the police power of the city would not override such a restraining order."

Plaintiffs assert that the city was a nonnominal party defendant. They dispute the city's argument that it was *only* a nominal defendant because the city was also a judgment creditor of the Collins, and thus it was a real party in interest. Furthermore, the city filed a notice of appearance in the action and a demand for a continuance, and those acts rendered it a nonnominal defendant.

Plaintiffs argue that the statute does not require that a copy of the judgment be served. *See:* sec. 806.06 (3), Stats., 1975. Plaintiffs state that because the city was served with notice of entry of judgment, it had a duty to ascertain the language of that judgment. Plaintiffs argue that the city did have actual notice of the injunction because it was on file at the time an employee of the department of building inspection and safety engineering of the city of Milwaukee inspected the records to ascertain the names of the parties to whom the raze order must be served.

Plaintiffs additionally argue that the raze order was void for three reasons. First, the receiver of the property

was not noticed with the raze order. Because the receiver is an indispensable party under sec. 801.12(1), Stats., 1975,[16] and he was not served, the raze order is void. Second, even if this indispensable party were included, jurisdiction was only proper before the foreclosure court as that court had custody of the property and had appointed a receiver nine months prior to the Chapter 66 proceedings. Third, plaintiffs allege that the sec. 66.05 (3) procedures were defective because all indispensable parties were not served with every order throughout the proceedings.[17]

We note at the outset the well-established principle that the trial court's findings of fact will be supported unless they are against the great weight and clear preponderance of the evidence. *Schroeder v. Schroeder,* 95 Wis. 2d 415, 418, 290 N.W.2d 548 (Ct. App. 1980) ; *Besaw v. Besaw,* 89 Wis. 2d 509, 517, 279 N.W.2d 192 (1979) ; *De Simone v. Kramer,* 77 Wis. 2d 188, 196, 252 N.W.2d 653 (1977) ; *Pleasure Time, Inc. v. Kuss,* 78 Wis. 2d 373, 379, 254 N.W.2d 463 (1977) ; *Baldwin v. Anderson,* 40 Wis. 2d 33, 41, 161 N.W.2d 553 (1968) ; *Abdella v. Smith,* 34 Wis. 2d 393, 401, 149 N.W.2d 537 (1967). In the instant case the trial court made specific findings of fact which the parties do not dispute. The findings of fact included: "9. That the CITY OF MILWAUKEE and the City Attorney for the CITY of MILWAUKEE, appeared

---

[16] Sec. 801.12(1), Stats., 1975, provides:

"**801.12 Jurisdiction in rem or quasi in rem, manner of serving summons for; notice of object of action.** (1) A court of this state exercising jurisdiction in rem or quasi in rem pursuant to s. 801.07 may affect the interests of a defendant in such action only if a summons and either a copy of the complaint or a notice of the object of the action under sub. (2) have been served upon the defendant."

[17] For example, plaintiffs assert that the Harrises never received notice to remove their personal property or notice of the final raze order.

in this action and received all pleadings and notices, pursuant to law, and had notice of the permanent injunction." Once a party has notice of an injunction, we hold that such party has a duty to ascertain its contents. In this case we conclude that the city, through an agent, had actual knowledge of the injunction because it reviewed the record in this case in order to determine who should be served in the Chapter 66 proceedings. The city may not escape compliance by arguing it was aware of the form but not the substance.

We find that the city was a proper party defendant to the foreclosure action, and its police power authority under Chapter 66 neither elevates nor reduces it from the status of any other party defendant. In other words, we find the city's argument that it was a nominal defendant and, thus, was not enough of a defendant to be bound by the injunction unpersuasive. Similarly, we find the argument that the city, by virtue of its police power, was somehow immunized from the injunction lacking in both common sense and legal support.[18] The language of the injunction is clear: "[T]he defendants . . . are, enjoined . . . from doing any act that may impair the value [of the mortgaged premises]." Because the injunctive language applied to all defendants, we determine that it makes no difference whether the city was a nominal or nonnominal, proper or real defendant. We agree with the comment of the trial judge: "The City is not beyond the kin [sic] of the law." By razing the improve-

---

[18] As we cautioned long ago concerning a governmental body's exercise of its police power: "Manifestly from what has been said the police power, while the most powerful instrumentality for good when properly exercised, is the most powerful for oppression when not so exercised." *State ex rel. Owen v. Donald,* 160 Wis. 21, 138, 151 N.W. 331 (1915).

ments and thereby impairing the value of the property,[19] the city violated the injunction. We conclude that the trial court's findings in this respect were not against the great weight and clear preponderance of the evidence.

A second major issue presented on this appeal concerns the amount of damages awarded to the plaintiffs-mortgagees and mortgagors. It is settled that a party is entitled to indemnification from the party in contempt in that amount which could be recovered in a separate action. *Novo Industrial Corp. v. Nissen,* 30 Wis. 2d 123, 130, 140 N.W.2d 280 (1966). Sec. 295.02(1)(a), Stats., 1975, states that a party is to be indemnified for actual "losses, costs and expenses." The trial court concluded that the Harrises were entitled to damages in the amount

---

[19] The court of appeals erroneously perceived the issue in this case to be "whether the city's conduct satisfies the elements of common-law waste." 101 Wis. 2d at 675. The injunction issued by the foreclosure court contained the following language: "enjoined from committing waste . . . and from doing any act that may impair the value [of the premises]." The issue cannot be reduced to a question of waste. The issue is whether the city's actions impaired the value of the foreclosed premises in violation of the injunction.

We find the city's argument that the property was valueless because a raze order was issued unpersuasive. Two assessments regarding the property's value were submitted to the foreclosure court. The assessment accepted by the trial court placed the value of the improvements at $7,500. In light of this assessment, we cannot conclude that the improvements to the property had no value.

We might additionally comment that we do not believe the city has satisfactorily accounted for the reason why it razed the property two to three weeks before the sheriff's sale.

Because we conclude that the city was bound by the foreclosure injunction, we do not discuss the validity of the raze order. We would comment, however, that the city's failure to serve an indispensable party, the receiver, presents a problem with the raze order's validity.

of $13,756.78,[20] and the Mohrs were entitled to damages in the amount of $7,765.10.[21] The city argues that the damages were excessive as they "amount to double indemnity for the property or double damages against the City." The circuit court awarded damages to the mortgagors based on the property's assessed fair market value of $10,000, plus an additional amount for loss of personal property. The city argues the trial court then determined that the mortgagees were also entitled to the $10,000 assessed fair market value of the property, less the outstanding real estate taxes. The Mohrs' and the Harrises' attorneys contended at oral argument that each party— mortgagor and mortgagee—was entitled to actual damages and that the sheriff's sale might have produced this same result.

■

We agree with the city that there was a double recovery, and we conclude that the trial court abused its dis-

---

[20] The trial court concluded as a matter of law:

"18. That the CITY OF MILWAUKEE's act in violation of the Judgment herein, caused loss, injury and expenses to the Petitioners HARRIS herein and the Petitioners' actual losses, costs and expenses chargeable to the CITY OF MILWAUKEE as actual damages in this proceeding are as follows:

| | | |
|---|---|---|
| "(1) Land and Improvements | | $10,000.00 |
| "(2) Fixtures and personal property | | 1,924.00 |
| "(3) Disbursements in this foreclosure matter | | 867.78 |
| "(4) Attorneys fees for court time only in Case #434–524 | | 965.00 |
| "Petitioners HARRIS actual damages | | $13,756.78" |

[21] The trial court concluded as a matter of law:

"19. That the Plaintiffs MOHR sustained loss, injury chargeable to the CITY OF MILWAUKEE as follows:

| | |
|---|---|
| "(1) Plaintiffs' total foreclosure judgment thru October 8, 1979 | $7,765.10 |
| "Plaintiffs MOHR actual damages | $7,765.10 |

"Plus interest at 7% since 10/8/79"

cretion in making such award. There can only be one recovery for the value of the property in the absence of a punitive damage award. It is apparent that the Harrises' award was not limited to their equity in the property. Because it included the value of the liens and the mortgage the Mohrs had on the property, the amount of damages exceeded the Harrises' equity in the property. We conclude that a single award should be disbursed to satisfy the mortgage deficiency, the judgments, and the balance paid to the Harrises. In this respect all parties would receive satisfaction for their actual damages, and there would be only one recovery for the value of the property. The detailed computation of damages can best be effectuated by the trial court, and accordingly we remand for that determination.

Although issue is raised with the trial court's award of attorneys' fees, we conclude there was no abuse of discretion.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the trial court for further proceedings on the issue of damages not inconsistent with this opinion.