118 Wis.2d 33 (1984)
345 N.W.2d 510
IN the MATTER OF the CONTEMPT FINDING AGAINST B.L.P., a juvenile under the age of 18: B.L.P., Appellant,
v.
CIRCUIT COURT FOR RACINE COUNTY, Honorable Jon B. Skow, presiding, and Racine County Department of Social Services, Respondents.
No. 83-911.
Court of Appeals of Wisconsin.
Submitted on briefs November 22, 1983.
Decided February 1, 1984.
*34 For the appellant, the cause was submitted on the briefs of Steven P. Weiss, assistant state public defender.
For the respondent, the cause was submitted on the brief of Margaret Borkin, assistant district attorney, of Racine, and a supplemental brief was submitted by Bronson C. La Follette, attorney general, and Kirbie Knutson, assistant attorney general.
An amicus curiae brief was submitted on behalf of the Circuit Court for Racine County, Honorable Jon B. Skow, Presiding, by Michael P. Erhard and David J. Harth of Foley & Lardner, of Madison.
Before Scott, C.J., Brown, P.J., and Nettesheim, J.
BROWN, P.J.
B.L.P. appeals to contempt finding for violating a dispositional order. Because we hold that juvenile courts must follow the procedures in chapter 785 of the Wisconsin Statutes when exercising contempt powers, we reverse.[1]
*35 On October 26, 1982, B.L.P., a sixteen-year-old girl, was adjudged delinquent after being caught shoplifting. The juvenile court's dispositional order contained a provision requiring her to attend school regularly with no unexplained absences or tardiness.
On three prior occasions, the juvenile court found B.L.P. in contempt for violating that order by being truant from school. For each of the three previous contempt findings, B.L.P. was placed in secure detention for three, six and thirty days, respectively.
The current contempt order, her fourth, is the subject of this appeal. The contempt proceeding itself was commenced sua sponte by the court through the issuance of a capias for B.L.P.'s arrest. On March 23, 1983, the court tried to conduct the hearing without having witnesses personally appearing; it attempted to use a telephone conference for witnesses to present the case against B.L.P. However, the case was adjourned until March 25th because a school official, a person the court needed to contact, was unavailable.
At the March 25th hearing, B.L.P., her mother and B.L.P.'s attorney were present. Present also were two people from the social services department and the individual from the school district who had been unable to talk to the court by telephone on March 23rd. An informal proceeding took place. There was no order of proof or sworn testimony. A representative of the district attorney's office was not in attendance. At the conclusion of the informal proceeding, B.L.P. was ordered to spend another thirty days in secure detention.
Chapter 785, Stats., the chapter detailing the procedure used to execute contempt actions, was not followed. The text relating to procedure is sec. 785.03(1). It sets forth the sanctions dealing with nonsummary procedure:
(a) Remedial sanction. A person aggrieved by a contempt of court may seek imposition of a remedial sanction *36 for the contempt by filing a motion for that purpose in the proceeding to which the contempt is related. The court, after notice and hearing, may impose a remedial sanction authorized by this chapter.
(b) Punitive sanction. The district attorney of a county, the attorney general or a special prosecutor appointed by the court may seek the imposition of a punitive sanction by issuing a complaint charging a person with contempt of court and reciting the sanction sought to be imposed. The district attorney, attorney general or special prosecutor may issue the complaint on his or her own initiative or on the request of a party to an action or proceeding in a court or of the judge presiding in an action or proceeding. The complaint shall be processed under chs 967 to 973. If the contempt alleged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial of the contempt unless the person charged consents to the judge presiding at the trial.
Had the juvenile court's action been a remedial sanction pursuant to ch. 785, there would have been a motion for that purpose. There is none on record. Had this been a punitive sanction, a complaint would have been filed. None was filed. Under either procedure, sworn testimony and a proper order of proof would be sacrosanct; it did not occur here. A contempt procedure was used which is wholly outside of ch.785.
There is no issue here of whether a court can hold a juvenile in contempt. That was decided in the affirmative by In the Interest of D.L.D., 110 Wis. 2d 168, 180, 327 N.W.2d 682, 688 (1983). What is at issue here is whether the juvenile court can use a procedure of its own design apart from ch. 785, Stats.
The Racine County Department of Social Services claims that juvenile courts need not follow the procedure of ch. 785, Stats., when exercising their contempt power.[2] *37 The department claims that the provisions of ch. 785 are not appropriate in contempt actions against juveniles.
Every Wisconsin authority which has considered the issue of contempt proceedings in a juvenile court, however, has concluded or recommended that ch. 785, Stats., be used. In D.L.D., a case in which the contempt was carried out pursuant to ch. 785, the supreme court stated:
[T]here is no indication in the Children's Code or the contempt statute that courts with juvenile jurisdiction have different contempt powers than other courts. It has been stated that: "Juvenile courts generally have the same power as other courts to punish for contempt."
Id. at 180, 327 N.W.2d at 688, quoting 47 Am. Jur. 2d Juvenile Courts, § 5 (1969).
The Attorney General of Wisconsin has issued an opinion on this precise issue. In 70 Op. Att'y Gen. 98, 107 (1981), the Attorney General opined that ch. 785, Stats., is the proper mode of exercising the contempt power. (See also The Wisconsin Judicial Bench Book, Vol. II, sec. 35 (1982), where all contempts are discussed in terms of applying the procedures in ch. 785.)
The department next argues, as does Judge Jon B. Skow in his amicus curiae brief, that even if the procedures set forth in ch. 785, Stats., are the recommended manner in which a court exercises its contempt power, they are not the exclusive procedures for bringing a contempt action in juvenile court. Rather, the juvenile court has broad discretion in the exercise of its contempt power. As long as the procedure provides for notice, representation *38 by counsel and a hearing, it is sufficient to satisfy due process. Such a proposition, however, allowing the juvenile court individual discretion to apply whatever procedures it wants, is totally unworkable and contrary to established principles of due process.
The notion that because the case is a juvenile case it requires less "process" than an equivalent adult proceeding was squarely and forcefully rejected in In re Gault, 387 U.S. 1 (1967). The United States Supreme Court pointed out that:
Juvenile Court history has again demonstrated that unbridled discretion, however benevolently motivated, is frequently a poor substitute for principle and procedure. In 1937, Dean Pound wrote: "The powers of the Star Chamber were a trifle in comparison with those of our juvenile courts . . . ." . . . The absence of procedural rules based upon constitutional principle has not always produced fair, efficient and effective procedures. Departures from established principles of due process have frequently resulted not in enlightened procedure, but in arbitrariness.
Id. at 18-19. (Footnote omitted; emphasis added.)
Furthermore, procedures which are informal and arbitrary and where unbridled discretion is the rule has been said to have a debilitating and destructive effect on the juvenile's perception of our judicial system and works to deprecate rehabilitation. The Court in Gault stated:
They suggest that the appearance as well as the actuality of fairness, impartiality and orderlinessin short, the essentials of due processmay be a more impressive and more therapeutic attitude so far as the juvenile is concerned . . . when the procedural laxness of the "parens patriae" attitude is followed by stern disciplining, the contrast may have an adverse effect upon the child, who feels that he has been deceived or enticed. They conclude as follows: "Unless appropriate due process of law is followed, even the juvenile who has violated the law may *39 not feel that he is being fairly treated and may therefore resist the rehabilitative efforts of court personnel."
Id. at 26. (Footnote omitted.)
Thus, the procedures chosen by the juvenile court in which no formal charge was ever given, no prosecuting authority was involved, no sworn testimony was taken, no right to a jury trial (in a punitive sanction) was afforded and which contemplated taking evidence over the court's telephone, with little effective confrontation, were totally unacceptable procedures and contrary to due process.
Although following the procedures required in ch. 785, Stats., regarding the exercise of a court's contempt power is much more cumbersome and time consuming, it is not the policy of the law to choose expedience over due process when, in fact, due process should be afforded.
In his amicus curiae brief, Judge Skow admits this action was begun on the court's own motion. He also agrees that ch. 785, Stats., allows punitive proceedings to be brought only by the "district attorney of a county, the attorney general or a special prosecutor appointed by the court." Judge Skow seems to assert, however, that if ch. 785 is the only means by which nonsummary contempt may be instituted, the statute is unconstitutional.[3]
We believe the judge fears that if only a prosecutor, a special prosecutor or the attorney general can commence the action and if each of them refuses, a court would be powerless to begin the contempt on its own. The result would be an emasculation of the inherent power to hold in contempt those persons who disobey a court's lawful order.
*40 An appellate court will not decide a question of constitutional law if it is unnecessary to do so. State ex rel. State Public Defender v. Percy, 97 Wis. 2d 627, 632, 294 N.W.2d 528, 531 (Ct. App. 1980). If Judge Skow had asked the district attorney or special prosecutor to issue a complaint and had been refused, the constitutional question of the exclusivity of sec. 785.03(1) (b), Stats., and its alleged impingement on a court's inherent power would have been properly before us. These are not the facts involved here. Judge Skow has made no attempt to exhaust the procedure set out by sec. 785.03(1) (b). It is, therefore, unnecessary to consider a resolution of this constitutional issue.
Another constitutional issue is properly before us, however. Judge Skow claims that ch. 785, Stats., unduly burdens and substantially interferes with the proper function of the judicial system. We fail to see how. Although legislatures cannot take away any power constitutionally conferred upon the judiciary, they can certainly write reasonable regulations on the means by which courts exercise that power. State v. Holmes, 106 Wis. 2d 31, 46, 315 N.W.2d 703, 710 (1982).
We do not know whether Judge Skow is referring to the remedial sanction or the punitive sanction as being unduly burdensome. Because he offered no purge to B.L.P., we assume he is confining his argument to the punitive sanction. It is not unreasonable to require a court to direct the district attorney to prepare a complaint, thus setting the procedural framework into motion in a punitive sanction. Nor is it difficult to appoint a special prosecutor if the necessity arises.[4] Moreover, *41 the due process considerations in punitive contempt situations have a long history of supportive case law. See State v. King, 82 Wis. 2d 124, 131, 262 N.W.2d 80, 83 (1978).
Judge Skow contends that application of ch. 785, Stats., procedures to contempt actions against juveniles places form over substance. We do not view the provisions of ch. 785 to be rooted in form. Indeed, they sound in procedural due process. Rather, we conclude that our holding properly places substance over form.
It is incumbent upon Judge Skow to show beyond a reasonable doubt that the legislatively prescribed contempt statute materially impairs or practically defeats the proper function of the judicial system. Holmes, 106 Wis. 2d at 41-44, 315 N.W.2d at 708-10. As he has made no such showing, his burden has not been sustained.
We conclude that juvenile courts must follow the procedures set forth in ch. 785, Stats., when exercising contempt powers. Because the procedures of ch. 785 were not followed in this case, we reverse the contempt order.
On remand, the question becomes: Which of the two nonsummary sanctions under ch. 785, Stats., must a juvenile court follow when exercising its contempt power? Section 785.03 authorizes both summary and nonsummary procedures. However, a summary procedure is only available if a contemptuous act is committed in the actual presence of the court. Because B.L.P. did not commit a contemptuous act in the court's presence, summary procedure is not appropriate.
This leaves the juvenile court with the alternatives available under nonsummary contempt. We have already *42 set forth the nonsummary procedure of sec. 785.03, Stats., detailing two different approaches, depending upon whether a remedial or punitive sanction is sought. The "remedial sanctions," sec. 785.03(1) (a), is imposed for the purpose of terminating a continuing contempt of court. The "punitive sanction," sec. 785.03(1) (b), is imposed to punish a past contempt of court for the purpose of upholding the authority of the court.
In seeking a remedial sanction, the statutory language makes it clear that the proper procedure is for an "aggrieved person" to first file a motion with the court. Only after the filing of such a motion is the court able to act. Then the court must give notice to the alleged contemnor and provide a full and fair hearing before it may impose a sanction.
In a juvenile's case, the remedial sanction is certainly an appropriate remedy. We caution, however, that the remedial sanction contemplates a purge. Thus, for example, in In the Interest of D.L.D., 110 Wis. 2d 168, 171, 327 N.W.2d 682, 683-84 (1983), the court found the juvenile in contempt due to a habitual truancy and ordered that she spend twenty days in secure detention. The order also provided, however, that if the juvenile attended school for the next thirty days, the contempt would be purged, and she would not have to be held in secure detention. Id. The supreme court found that the juvenile court's order was primarily remedial, because its main purpose was to force D.L.D. to attend school. The punitive purpose of upholding the court's authority was secondary. Id. at 179-80, 327 N.W.2d at 688.
Therefore, if a court is in a position to impose a remedial sanction, it must give the juvenile the opportunity to purge the contempt order by satisfying accompanying conditions set forth in the order.
If the juvenile fails to purge, it would then be necessary to hold another hearing before the juvenile could be sent to secure detention. If the purge incentive does *43 not work and the juvenile is faced with imprisonment, the juvenile court must first take into consideration the best interests of the child pursuant to sec. 48.01 (2), Stats. We agree with the Attorney General when he points out in an opinion that the paramount consideration in determining whether to commit a juvenile to any kind of custodial facility is that of the child's welfare. See 70 Op. Att'y Gen. 98, 104 (1981). He asserts that the Wisconsin legislature has expressly adopted this general policy in sec. 48.01(2). He is correct. The statute reads as follows:
This chapter shall be liberally construed to effect the objectives contained in this section. The best interests of the child shall always be of paramount consideration, but the court shall also consider the interest of the parents or guardian of the child, . . . and the interests of the public.
A trial court is further guided by the four conditions enunciated in D.L.D. which must be met before secure detention is imposed. These are:
(1) The juvenile was given sufficient notice to comply with the order and understands its provisions.
(2) The violation of the court order is egregious.
(3) Less restrictive alternatives were considered and found to be ineffective; and
(4) Special confinement conditions are arranged consistent with sec. 48.209, Stats.
Id. at 187, 327 N.W.2d at 692. We conclude that the remedial sanction can be used, provided the foregoing procedures and considerations are followed.
The alternative to the remedial sanction is punitive discipline. If a punitive sanction is sought to be imposed upon a juvenile, sec. 785.03(1) (b), Stats., provides that a complaint is first necessary, and this complaint is to be processed under chs. 967 to 973, the statutes prescribing criminal procedures.
*44 Where a contempt action is based on alleged disobedience of a juvenile dispositional order, however, it would be more appropriate to use the procedures applicable to an adjudication of a delinquency under ch. 48, Stats., than to use criminal procedures.[5] This would assure that the confidentiality guaranteed in other juvenile proceedings is carried over into the contempt proceedings. In addition, the court is not to exercise this contempt power unless the same four conditions in D.L.D. are met. This is because the Wisconsin Supreme Court has noted that "the power of contempt is an extraordinary one that should be used sparingly and with the utmost sensitivity." D.L.D. at 182, 327 N.W.2d at 689.
In all practicality, it may not often be possible for the court to entertain a remedial sanction as opposed to a punitive sanction simply because for a remedial sanction to be entertained, there must be a motion to the court by an "aggrieved person." This contemplates someone other than the trial court. In this case in particular, the remedial sanction may not be available. It seems that the juvenile court's only available option, in this instance, is the punitive sanction. As such, the juvenile court is advised that, although it may request the district attorney or a special prosecutor to proceed in a ch. 48, Stats., proceeding for an adjudication of delinquency, it must take pains to assure that it is in compliance with the mandate in D.L.D. and the holding of this case.
By the Court.Order reversed and remanded.
NOTES
[1] This was originally a one-judge appeal. Because of the importance of the issues raised, the chief judge, upon request of the court, changed it to a three-judge appeal on October 28, 1983. See sec. 809.41(2), Stats.
[2] When this case was originally a one-judge appeal, the brief for the respondent was written by the Racine County District Attorney's Office on behalf of the Racine County Department of Social Services. Sec. 809.41(1), Stats., provides that, when a case is changed to a three-judge appeal, notice shall be given to the attorney general, and the attorney general shall be afforded the opportunity to present a brief. See also secs. 752.31(4) and 165.25(1), Stats. The attorney general has forwarded a brief. The attorney general's brief disagrees with the county and the trial court. It presents an analysis similar to this court's and requests reversal of the case.
[3] Although Judge Skow is not a "party" in this case, we reach the question of constitutionality based upon the discussion of a similar nature in State v. Holmes, 106 Wis. 2d 31, 38-41, 315 N.W.2d 703, 707-08 (1982).
[4] We point out that the power of a circuit court is not limited to appointment of special prosecutors pursuant to sec. 59.44, Stats., which states that a district attorney must first act and request a special prosecutor before one can be appointed. We said in State v. Lloyd, 104 Wis. 2d 49, 56-57, 310 N.W.2d 617, 622 (Ct. App. 1981), that sec. 59.44 is not the sole means by which a trial court may appoint a special prosecutor. In Lloyd, we held that a trial court may appoint counsel to prosecute a case when the district attorney refuses to maintain an action.
[5] See secs. 48.23(1) (a) and (4), 48.255, 48.27, 48.293, 48.299, 48.31, and 48.355, Stats.