HON. DEAN HELLER, SECRETARY OF STATE OF THE STATE OF NEVADA, PETITIONER, *v.* THE LEGISLATURE OF THE STATE OF NEVADA, RESPONDENT.

No. 43079

July 14, 2004                                    93 P.3d 746

*Brian Sandoval,* Attorney General, *Jeff E. Parker,* Solicitor General, and *Ann P. Wilkinson,* Deputy Attorney General, Carson City, for Petitioner.

*Brenda J. Erdoes,* Legislative Counsel, and *Kevin C. Powers,* Principal Deputy Legislative Counsel, Carson City, for Respondent.

*Beckley Singleton, Chtd.,* and *Daniel F. Polsenberg* and *Beau Sterling,* Las Vegas; *Bradley Drendel & Jeanney* and *William O. Bradley Sr.,* Reno; *William Patterson Cashill,* Reno; *Robert C. Maddox & Associates* and *Robert C. Maddox,* Las Vegas, for Amici Curiae Las Vegas Police Protective Association, Metro Inc.; Nevada Association of School Administrators; Nevada Faculty Alliance; Nevada State AFL-CIO; Professional Firefighters of Nevada; Retired Public Employees of Nevada; and State of Nevada Employees Association (SNEA/AFSME Local 4041).

*Dyer, Lawrence, Penrose, Flaherty & Donaldson* and *Michael W. Dyer, James W. Penrose,* and *Cory A. Watkins,* Carson City, for Amici Curiae Nevada State Education Association, Clark County

Education Association, Education Support Employees Association of Clark County, and Washoe Education Association.

*Allen Lichtenstein,* Las Vegas, for Amicus Curiae American Civil Liberties Union of Nevada.

*James T. Richardson,* Reno; *Watson Rounds* and *Matthew D. Francis,* Reno, for Amicus Curiae The Nevada Faculty Alliance.

458

**OPINION**

*Per Curiam:*

In this original mandamus proceeding, the Secretary of State challenges state government employees' service in the Legislature as violating the Nevada Constitution's separation of powers. The Secretary also questions whether local government employees may serve as legislators without violating separation of powers.

Ironically, the Secretary's attempt to have state executive branch employees ousted or excluded from the Legislature is barred by the same doctrine he relies on—separation of powers. The Nevada Constitution expressly reserves to the Senate and Assembly the au-

thority to judge their members' qualifications. Nearly every state court to have confronted the issue of dual service in the legislature has found the issue unreachable because a constitutional reservation similar to Nevada's created an insurmountable separation-of-powers barrier. Thus, by asking us to declare that dual service violates separation of powers, the Secretary urges our own violation of separation of powers. We necessarily decline this invitation.

Additionally, significant procedural defects plague the Secretary's petition for mandamus relief. Specifically, the Secretary lacks standing to seek any type of relief forcing the Legislature to take action on its members' qualifications, this matter is not ripe for review, and the Secretary has sued the wrong party. Further, quo warranto, rather than mandamus, is the appropriate vehicle by which to challenge a legislator's title to public office.

Accordingly, the Secretary's petition must be denied.

## FACTS

On April 2, 2004, the Secretary of State filed in this court a petition for a writ of mandamus, asking us to (1) find that service in the Legislature by "certain," unidentified executive branch employees violates separation of powers; (2) direct the Legislature as a whole to enforce separation of powers; (3) determine whether separation of powers is violated by "certain," unidentified local government employees' service in the Legislature; (4) permit the Secretary leave to amend the petition "to seek additional remedies in the event the Legislature fails to act as required by this Court"; and (5) provide "other and further relief as this Court" deems proper. The Secretary relies on a March 1, 2004 Attorney General opinion concluding that separation of powers "bars any employee from serving in the executive branch of government and simultaneously serving as a member of the Nevada State Legislature," but tolerates a local government employee's simultaneous service as a legislator.

On May 4, 2004, the Legislature filed an answer, listing numerous bars to mandamus relief, and asserting that the Secretary's "only judicial recourse is to bring an appropriate judicial action against the individual legislator to determine whether the legislator may keep his public employment." The Legislature concludes that separation of powers is not violated by a legislator's service in state or local government employment.

This court also permitted the filing of amicus briefs by The Nevada Faculty Alliance, The American Civil Liberties Union of Nevada, various educational associations, and a consortium of amici headed by the Las Vegas Police Protective Association, Metro Inc. These amici all join against the Secretary, and mostly reiterate points made by the Legislature.

On May 20, 2004, the Secretary filed a reply to the Legislature's answer, partially altering the relief sought. The Secretary states that he seeks an interpretation of Article 3, Section 1(1) (separation of powers), as it pertains to executive branch employees serving in the Legislature. The Secretary then asks that we "order[ ] the Legislature to rely on that interpretation in the performance of its discretionary duty of judging the qualifications of its members under Article 4, Section 6." While the Secretary cites the upcoming primary and general elections as creating an urgent and strong need for our immediate intervention, the Secretary requests that relief "apply on a prospective basis only," taking effect at the start of the Legislature's 73d regular session in February 2005. Essentially, the Secretary asks us to declare state executive branch employees unqualified to serve as legislators, and then direct the Legislature to comply with our declaration and either remove or exclude those employees from the Legislature beginning in 2005.[1]

## DISCUSSION

Part I of this opinion addresses the procedural bars to mandamus relief, noting that the Secretary lacks standing to seek mandamus relief and has sued the wrong party at the wrong time, and that quo warranto is the appropriate proceeding in which to challenge title to a public office. Part II identifies the insurmountable separation-of-powers bar to this court judging state executive branch employees' service in the Legislature. And finally, Part III discusses the proper proceedings and parties to raise the dual service issue: district court actions, filed by the attorney general or legally interested persons seeking, respectively, quo warranto or declaratory relief to exclude a legislator from executive branch employment.

### I.

*The Secretary lacks standing to seek the exclusion or ouster of executive branch employees from the Legislature*

"Standing is the legal right to set judicial machinery in motion."[2] To establish standing in a mandamus proceeding, the peti-

---

[1] Although the Secretary artfully avoids directly asking that we judge state executive branch employees' qualifications and then oust or exclude those employees from the Legislature, the Secretary's petition, if granted, would accomplish those results. Under the present circumstances, asking that we "interpret[ ]" separation of powers to bar legislative service is no different than asking that we judge state employees' qualifications to serve. And when the Secretary asks that we enforce our interpretation with an order to the Legislature, we are in fact being asked to oust or exclude state employees from the Legislature.

[2] *Smith v. Snyder,* 839 A.2d 589, 594 (Conn. 2004) (internal quotation marks omitted).

tioner must demonstrate a ''beneficial interest'' in obtaining writ relief.[3] Although this court has not defined ''beneficial interest,'' the California courts have: ''To demonstrate a beneficial interest sufficient to pursue a mandamus action, a party must show a direct and substantial interest that falls within the zone of interests to be protected by the legal duty asserted.''[4] ''Stated differently, the writ must be denied if the petitioner will gain no direct benefit from its issuance and suffer no direct detriment if it is denied.''[5] Although neither the Legislature nor the Secretary has addressed standing in the documents before us, we necessarily reach the issue, as it affects our original jurisdiction.[6]

The Secretary has no discernible beneficial interest in having state executive branch employees ousted or excluded from the Legislature. The Secretary's only explicit duty under the Nevada Constitution is to ''keep a true record of the Official Acts of the Legislative and Executive Departments of the Government, and . . . when required, lay the same and all matters relative thereto, before either branch of the Legislature.''[7] And Nevada's Legislature, by designating the Secretary as the chief officer of elections, and by giving his office the authority to administer the state's election process, appears to have intended that the Secretary only have standing to seek enforcement of the state's election laws.

A public officer's capacity to sue is incident to the duties of the office.[8] In his capacity as the state's chief elections officer, the Secretary must obtain and maintain consistency in the application, operation and interpretation of election laws.[9] With respect to candidates for state office, the Secretary ''prescribe[s] the forms for a declaration of candidacy, certificate of candidacy, [and] acceptance of candidacy.''[10] After a person has filed a candidacy declara-

---

[3]NRS 34.170. State courts are not bound by federal standing principles, which derive from the ''case or controversy'' component of the United States Constitution. *Holiday Inn-West v. Coleman,* 792 S.W.2d 345, 347 n.1 (Ark. Ct. App. 1990); *Ohio Roundtable v. Taft,* 773 N.E.2d 1113, 1121 (Ohio Ct. C.P. 2002).

[4]*Lindelli v. Town of San Anselmo,* 4 Cal. Rptr. 3d 453, 461 (Ct. App. 2003).

[5]*Waste Management v. County of Alameda,* 94 Cal. Rptr. 2d 740, 747 (Ct. App. 2000).

[6]*See Delogu v. City of Portland,* 843 A.2d 33, 34 n.1 (Me. 2004); *Smith,* 839 A.2d at 594 n.5; *Hendrick v. Walters,* 865 P.2d 1232, 1236 (Okla. 1993). The standing issue was discussed, however, during oral argument.

[7]Nev. Const. art. 5, § 20.

[8]*State ex rel. Manchin v. Lively,* 295 S.E.2d 912, 915 (W. Va. 1982).

[9]NRS 293.247.

[10]NRS 293.247(1).

tion or acceptance, a written challenge that the prospective candidate does not meet constitutional qualifications may be filed with the Secretary, who then begins a process preliminary to judicial review.[11] Following a primary election, the Secretary must certify all nominations for state offices to the various county clerks.[12] Ultimately, once ballots are prepared for a general election, the Secretary oversees the voting process for the election.[13]

In the present matter, the Secretary does not contend that he is unable to discharge his official duties relating to state election laws without writ relief. Rather, the Secretary suggests that he seeks to enforce and uphold the Nevada Constitution on behalf of the state's citizens. Notwithstanding that broad suggestion, the petition ultimately seeks to oust or exclude state executive branch employees from the Legislature. This remedy is not within the Secretary's scope of authority, which is to administer the state's election process. And even after an election, when presented with a contest over a seat in the Senate or Assembly, the Secretary is powerless to do anything other than transmit the election contest documents to the appropriate legislative house.[14] We conclude, then, that the Secretary lacks standing to seek mandamus relief regarding the dual service issue.

*The Secretary has sued the wrong party at the wrong time*

According to the Legislature, the authority to determine members' qualifications rests with each House, rather than the Legislature as a whole, and neither House may interfere with seating the other's members. Thus, the Legislature argues, the Secretary has sued the wrong party, as he seeks to compel an act that the Legislature as a whole has no legal authority to perform. We agree. Article 4, Section 6, of the Nevada Constitution expressly reserves to "Each House" the right to judge members' qualifications.[15] The framers of our Constitution could have easily

---

[11]NRS 293.182(1), (3).

[12]NRS 293.190.

[13]NRS 293.2696.

[14]NRS 293.425; NRS 293.427.

[15]The Secretary cites *State v. Lincoln County Power District,* 60 Nev. 401, 405, 111 P.2d 528, 530 (1941), where we stated that "the legislature possesses the whole legislative powers of the people." *Lincoln County Power District* involved issues relating to property taxation and the creation of municipal corporations, and we fail to see how our statements in that case are relevant to the Secretary's failure to sue the Senate and Assembly over their members' qualifications.

given the reservation to the Legislature as a whole, but chose instead to repose the right to judge members in the Legislative House to which the member belongs.

And until executive branch employees are actually seated in the 73d Legislature, this court has no concrete controversy to resolve, given that the voters might reject such candidates, those candidates and incumbents might resign their executive branch employment before the legislative session begins, or the Senate and Assembly might find that dual service constitutes a disqualification.[16] Thus, this matter is not yet ripe for review.

*Even if the Secretary had standing and had sued the correct parties at the proper time, quo warranto, rather than mandamus, is the proper mechanism to try title to a public office*

A writ of mandamus will not issue if the petitioner has a plain, speedy and adequate remedy in the ordinary course of law.[17] Most states recognize that quo warranto is not only an adequate remedy to challenge a person's right to hold public office, it is the exclusive remedy.[18] In those states, mandamus is ordinarily appropriate only before the office is filled.[19]

Quo warranto is an ancient common law writ and remedy ''to determine the right to the use or exercise of a franchise or office and to oust the holder from its enjoyment, if the holder's claim is not well founded, or if he or she has forfeited his or her right to enjoy the privilege.''[20] The rationale for quo warranto's exclusiveness rests, as noted by the Pennsylvania Supreme Court, on its an-

---

[16]*Resnick v. Nevada Gaming Commission,* 104 Nev. 60, 66, 752 P.2d 229, 233 (1988) (observing that ''litigated matters must present an existing controversy, not merely the prospect of a future problem'' (internal quotation marks omitted)).

[17]NRS 34.170.

[18]65 Am. Jur. 2d *Quo Warranto* §§ 8-10 (2001); *e.g., Ex parte Sierra Club,* 674 So. 2d 54, 57 (Ala. 1995); *Nicolopulos v. City of Lawndale,* 111 Cal. Rptr. 2d 420, 422 (Ct. App. 2001); *Breslin v. Warren,* 359 N.E.2d 1113, 1114 (Ill. App. Ct. 1977); *Layle v. Schnipke,* 186 N.W.2d 559, 560 (Mich. 1971); *Delgado v. Sunderland,* 767 N.E.2d 662, 665 (N.Y. 2002); *State v. Tapp,* 380 P.2d 260, 267 (Okla. 1963); *McCracken v. Bissett,* 203 A.2d 481, 481 (Pa. 1964); *Lewis v. Drake,* 641 S.W.2d 392, 394 (Tex. App. 1982).

[19]*McCracken,* 203 A.2d at 481; *see, e.g., Mengelkamp v. List,* 88 Nev. 542, 501 P.2d 1032 (1972) (petition for a writ of mandamus to compel county clerk to place petitioners' names on ballot).

[20]74 C.J.S. *Quo Warranto* § 1, at 96 (2002).

cient design as a means to test title to public office and its involvement of all interested parties:

> Quo warranto is the Gibraltar of stability in government tenure. Once a person is duly elected or duly appointed to public office, the continuity of his services may not be interrupted and the uniform working of the governmental machinery disorganized or disturbed by any proceeding less than a formal challenge to the office by that action which is now venerable with age, reinforced by countless precedent, and proved to be protective of all parties involved in a given controversy, namely, *quo warranto*.[21]

Mandamus is ill-suited for determining whether a person unlawfully holds public office because, unlike quo warranto, the officeholder need not be made a party to the proceeding and no legal officer of the state need authorize the action.[22]

*The Nevada Legislature cannot exempt its members from quo warranto suits*

Nevada has codified quo warranto, making it available "[a]gainst a person who usurps, intrudes into, or unlawfully holds or exercises, a public office."[23] In 1971, the Nevada Legislature modified the quo warranto statute to exempt its members from quo warranto actions.[24] The legislative history indicates that the exemption was intended to "strengthen[ ] the position that the

---

[21]*In re Board of School Directors of Carroll Twp.*, 180 A.2d 16, 17 (Pa. 1962); *accord Lewis*, 641 S.W.2d at 395 ("Public officers should be free to perform their duties without having their authority questioned incidentally in litigation between other parties. They should not be called on to defend their authority unless a proper legal officer of the State has determined that the question raised is serious and deserves judicial consideration . . . .").

[22]*See* 74 C.J.S. *Quo Warranto* § 43, at 125 (2002) ("The consent of the attorney general . . . is ordinarily necessary to the institution of quo warranto proceedings . . . ."); *id.* § 58, at 133 ("To reach its objective, a quo warranto proceeding must be brought against a person who is charged with exercising the public office in question without a lawful right."); *see also* NRS 35.040 (providing that the Attorney General may sue in quo warranto on his own relation, or, with leave of court, on the relation of another person); NRS 35.060 (requiring that the person unlawfully holding office be named as a defendant).

[23]NRS 35.010(1).

[24]1971 Nev. Stat., ch. 371, § 1, at 660 (adding the following emphasized language to the quo warranto statute: "A civil action may be brought in the name of the state . . . [a]gainst a person who usurps, intrudes into, or unlawfully holds or exercises, a public office, civil or military, *except the office of assemblyman or state senator*").

Legislature has the right to seat its own people.''[25] But as this court's power to issue writs of quo warranto derives from the Nevada Constitution,[26] the Legislature's statutory attempt to exempt its members from quo warranto actions fails. As noted by the California Supreme Court, a legislature cannot restrict a court's original jurisdiction to issue writ relief ''in a manner that would substantially impair the constitutional powers of the courts, or practically defeat their exercise.''[27] This court said as much in *MPC Contractors v. Appeals Officer*,[28] when we held that former NRS 34.330's reservation of prohibition jurisdiction in ''only'' the supreme court unlawfully intruded upon the district court's constitutional authority to issue writ relief.

Here, instead of altering or enlarging various procedural aspects of the quo warranto remedy, such as timing or pleading requirements, the Legislature's exemption of its members from quo warranto suits has carved an entire area from the judiciary's constitutionally originated powers to issue writs of quo warranto. Consequently, the legislator exemption is infirm, and quo warranto is not an inadequate remedy justifying the Secretary's resort to mandamus relief.[29] But as explained below, even if the Secretary

[25]Hearing on A.B. 180 Before the Assembly Comm. on Judiciary, 56th Leg. (Nev., Feb. 15, 1971).

[26]Nev. Const. art. 6, § 4 (providing that the supreme court shall have ''power to issue writs of *mandamus, certiorari,* prohibition, *quo warranto,* and *habeas corpus* and also all writs necessary or proper to the complete exercise of its appellate jurisdiction''); *see also id.* § 6(1) (infusing district courts with the ''power to issue writs of Mandamus, Prohibition, Injunction, Quo-Warranto, Certiorari, and all other writs proper and necessary to the complete exercise of their jurisdiction'').

[27]*Leone v. Medical Bd. of Cal.*, 995 P.2d 191, 196 (Cal. 2000) (internal quotation marks omitted); *accord In re Estate of Gebis*, 710 N.E.2d 385, 387 (Ill. 1999) (stating that a legislature may not limit a court's original jurisdiction to hear a justiciable matter); *Petersen v. Utah Bd. of Pardons*, 907 P.2d 1148, 1152 (Utah 1995) (stating that when a ''[c]ourt's writ powers are derived from the constitution, the Legislature cannot diminish them''); *Matter of B.L.P.*, 345 N.W.2d 510, 514 (Wis. Ct. App. 1984) (''Although legislatures cannot take away any power constitutionally conferred upon the judiciary, they can certainly write reasonable regulations on the means by which courts exercise that power.'').

[28]111 Nev. 606, 894 P.2d 384 (1995); *accord Hanvey v. Thompson*, 243 So. 2d 748, 751 (Ala. 1971).

[29]*See State v. Harmon*, 38 Nev. 5, 7, 143 P. 1183, 1184 (1914) (stating that ''[t]itle to office cannot . . . be tried by other than [a] direct proceeding'' in quo warranto, and concluding that a county health officer's eligibility for membership in the Republican county central committee could not be considered on petition for writ of prohibition). To the extent that *Petrie v. Gragson*, 78 Nev. 362, 374 P.2d 433 (1962), supports invoking mandamus when quo warranto is available, it is overruled.

had sought relief through quo warranto, separation of powers would have precluded our intervention.

## II.

*The Nevada Constitution bars judicial review of a state executive branch employee's service in the Legislature*

Separation of powers resides in Article 3, Section 1(1):

> The powers of the Government of the State of Nevada shall be divided into three separate departments,—the Legislative,—the Executive and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases expressly directed or permitted in this constitution.

As we have previously recognized, separation of powers "is probably the most important single principle of government declaring and guaranteeing the liberties of the people."[30] It works by preventing the accumulation of power in any one branch of government.[31]

Separation of powers is particularly applicable when a constitution expressly grants authority to one branch of government,[32] as the Nevada Constitution does in Article 4, Section 6:

> Each House shall judge of the qualifications, elections and returns of its own members, choose its own officers (except the President of the Senate), determine the rules of its proceedings and may punish its members for disorderly conduct, and with the concurrence of two thirds of all the members elected, expel a member.

This provision expressly reserves to the Senate and Assembly the rights to extend, withhold and withdraw membership status.[33] The Secretary would have us appropriate these rights to direct the ouster or exclusion of state executive branch employees from legislative service. This we cannot do.

As observed by the Legislature, state courts have consistently concluded that a constitutional provision providing that the legislature "shall judge" the qualifications, returns and elections of its own members insulates a legislator's qualifications to hold office

---

[30]*Galloway v. Truesdell*, 83 Nev. 13, 18, 422 P.2d 237, 241 (1967).

[31]1 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 3.12, at 394 (3d ed. 1999).

[32]1 Laurence H. Tribe, *American Constitutional Law* 127 (3d ed. 2000).

[33]*See* 1 Norman J. Singer, *Statutes and Statutory Construction* § 6.04, at 532 (5th rev. ed. 1994).

from judicial review.[34] In other words, a legislative body's decision to admit or expel a member is almost unreviewable in the courts.[35] This point is exemplified in a Utah case, *State v. Evans.*[36] In *Evans,* Utah's attorney general sought an extraordinary writ against three state legislators, two of whom were also employed in the executive branch and one of whom had a contract with the executive branch. The attorney general claimed that concomitant service violated Utah's separation of powers and requested a judgment that the defendants either resign their legislative posts or terminate their executive branch connections.[37] The Utah Supreme Court denied writ relief, "declin[ing] to interfere with or second-guess" the legislature's decision to seat the defendants.[38] The court relied on the Utah Constitution's provision that " '[e]ach house shall be the judge of the *election and qualifications* of its members,' "[39] and noted that other state courts had interpreted analogous constitutional provisions as barring judicial intervention.[40] But insofar as the defendants' executive branch connections were concerned, the court found that issue better suited for a declaratory relief action, "where a full record can be developed regarding the nature and scope of the [defendants'] employment duties."[41] *Evans* demonstrates the principle that, although a court may not review a state

---

[34]16 C.J.S. *Constitutional Law* § 201 (1984); Legislation, *The Legislature's Power to Judge the Qualifications of its Members,* 19 Vand. L. Rev. 1410, 1410-11 (1966). Even a 1952 Nevada Attorney General Opinion states that courts cannot intrude on the Senate and Assembly's prerogative to judge their members' qualifications based on employment in the executive branch. Att'y Gen. Op. 183 (July 9, 1952).

[35]*See* 16 C.J.S. *Constitutional Law* § 201 (1984).

[36]735 P.2d 29 (Utah 1987).

[37]*Id.* at 29.

[38]*Id.* at 32.

[39]*Id.* at 30 (quoting Utah Const. art. VI, § 10).

[40]*Id.* at 30-31 (citing *Buskey v. Amos,* 310 So. 2d 468 (Ala. 1975) (holding that appellate court lost jurisdiction to consider candidate's residency when the candidate was sworn in to the Alabama Senate); *State v. Wheatley,* 125 S.W.2d 101 (Ark. 1939) (refusing to consider whether a state legislator was disqualified from service based on his conviction for an infamous crime); *State ex rel. Turner v. Scott,* 269 N.W.2d 828 (Iowa 1978) (characterizing as a nonjusticiable controversy a quo warranto action to remove a senator who allegedly failed to satisfy state's inhabitancy requirement); *State ex rel. Ford v. Cutts,* 163 P. 470 (Mont. 1917) (declining to consider quo warranto challenge to legislator's right to sit in the Montana House of Representatives); *Raney v. Stovall,* 361 S.W.2d 518 (Ky. Ct. App. 1962) (refusing to question the Kentucky Senate's approval of a deputy sheriff serving as a senator); and *Lessard v. Snell,* 63 P.2d 893 (Or. 1937) (declining to question the qualifications of a state senator who had been commissioned as a notary public and employed as a county attorney)).

[41]*Id.* at 33.

employee's qualifications to sit as a legislator, a court may review a legislator's employment in the executive branch. This dichotomy exists because no state constitutional provision gives the executive branch the exclusive authority to judge its employees' qualifications. Often then, cases discussing and resolving the dual service issue arise when a legislator seeks remuneration for working in the executive branch or when a party seeks to remove a legislator from executive branch employment.[42]

The Secretary has not identified, nor are we aware of, any case in which the separation-of-powers barrier was breached to oust a member of the legislature for any reason, including dual service.[43] According to the Minnesota Supreme Court, "[t]here are good reasons for such widespread acceptance of the principle, often framed in terms of legislative self-protection":

> "It is obvious, that a power must be lodged somewhere to judge of the elections, returns, and qualifications of the members . . . . The only possible question on such a subject is, as to the body, in which such a power shall be lodged. If lodged in any other, than the legislative body itself, its independence, its purity . . . may be destroyed . . . . No other body, but itself, can have the same motives to preserve and

---

[42]*E.g., Hudson v. Annear,* 75 P.2d 587 (Colo. 1938) (concluding that legislators assigned to work in the income tax department of the state treasurer's office were entitled to remuneration, notwithstanding the state constitution's separation of powers provision); *State v. Burch,* 80 N.E.2d 294, 299 (Ind. 1948) (holding that the Indiana Constitution's separation-of-powers provision prohibited legislators "employed in the administrative department of government" from receiving salaries for those jobs); *State ex rel. Spire v. Conway,* 472 N.W.2d 403, 408 (Neb. 1991) (concluding that Nebraska's separation-of-powers proviso did not shield a state senator's employment as a college professor from review, but would preclude review of the senator's right to retain his seat).

[43]*Cf. Foster v. Harden,* 536 So. 2d 905, 906 (Miss. 1988) (refusing to consider an election contest which questioned whether a state senator satisfied a residency requirement, because "[e]ach legislative body is the sole judge of the elections, returns, and qualifications of its own members, and its action in admitting or expelling a member is not reviewable in the courts" (internal quotation marks omitted)); *State v. Banks,* 454 S.W.2d 498, 500-01 (Mo. 1970) (declining to consider a quo warranto action to oust a state legislator, and stating that no authority existed to contradict the principle that a legislature's power to judge its members' qualifications is exclusive); *Lessard v. Snell,* 63 P.2d 893, 894 (Or. 1937) (barring secretary of state from declaring senator's seat vacant, and stating, "We apprehend there is no case in the books—certainly none has been cited—where any court has ever ousted a member of a Legislature or directed such co-ordinate branch of the government to accept any person as one of its members."). *But cf. State ex rel. Stratton v. Roswell Schools,* 806 P.2d 1085, 1095 (N.M. Ct. App. 1991) (concluding, without recognizing the New Mexico Constitution's qualifications clause, that a school teacher and a school administrator were not barred by separation of powers from being legislators).

perpetuate these attributes; no other body can be so perpetually watchful to guard its own rights and privileges from infringement, to purify and vindicate its own character, and to preserve the rights, and sustain the free choice of its own constituents. Accordingly, the power has always been lodged in the legislative body by the uniform practice of England and America."[44]

Cases from California and Oregon also illustrate the principle of restraint counseled by separation of powers. In *California War Veterans for Justice v. Hayden,*[45] war veterans sued to disqualify an assemblyman from the California Assembly because of his "actions in support of North Vietnam."[46] The veterans relied on a California constitutional provision barring from public office any person " 'who advocates the support of a foreign government against the United States.' "[47] The superior court dismissed the complaint, and the California Court of Appeal affirmed, stating that it was "unequivocally clear" that the suit was barred by the California Constitution's directive that " '[e]ach house shall judge the qualifications and elections of its members.' "[48] And in *Lessard v. Snell,*[49] the Oregon Supreme Court found that a similar Oregon constitutional provision prevented it from determining whether a state senator was barred from public office by his appointments as a notary public and a state-employed attorney. The court supported its decision on separation-of-powers grounds:

> [T]o pass upon the eligibility of plaintiff to the office of State Senator would be an encroachment upon the constitutional prerogatives of a co-ordinate branch of the government. It would be wholly foreign to our constitutional system of government for the executive or judicial department to determine a matter expressly reserved for the Legislature. There is no principle more fundamental than that the three branches of the government—the legislative, the executive, and the judicial—are co-ordinate and independent. Neither can interfere with the duties or functions of the other without striking a blow at the foundation of the government itself.[50]

---

[44]*Scheibel v. Pavlak,* 282 N.W.2d 843, 847 (Minn. 1979) (quoting Story, *Commentaries on the Constitution* § 416 (abr. ed. 1833), *cited in* Legislation, *The Legislature's Power to Judge the Qualifications of Its Members,* 19 Vand. L. Rev. 1410, 1412 (1966)).

[45]222 Cal. Rptr. 512 (Ct. App. 1986).

[46]*Id.* at 513.

[47]*Id.* at 516 (quoting Cal. Const. art. VII, § 9).

[48]*Id.* at 514, 516 (quoting Cal. Const. art. IV, § 5).

[49]63 P.2d 893 (Or. 1937).

[50]*Id.* at 894.

*Mengelkamp v. List*[51] is one of the few Nevada cases that discusses the Legislature's authority to judge its members' qualifications under Article 4, Section 6. There, underage candidates for the Legislature sought a writ of mandamus compelling the county clerk to place their names on the ballot. The petitioners argued that, because only the Legislature may judge members' qualifications, they should be placed on the ballot, and if elected, judged by the Legislature. This court summarily rejected petitioners' argument and denied writ relief.

*Mengelkamp* does not support the Secretary's request for judicial intrusion on the Senate and Assembly's right to judge their members' qualifications. In *Mengelkamp,* because the petitioners were statutorily ineligible to run for office, the clerk was under no legal duty to place the petitioners' names on the ballot, and therefore, our intervention was not warranted. Rather than judge the petitioners' qualifications, we simply observed the Legislature's established age requirement. And eight years earlier, in *Laxalt v. Cannon,*[52] we recognized, in dictum, that constitutional provisions similar to Nevada's Article 4, Section 6, "deprive[ ] the state courts of jurisdiction to decide election contests for state legislative offices."

The Secretary suggests that the California Court of Appeal, in *Elliott v. Van Delinder,*[53] interpreted California's separation-of-powers proviso to mean that a person may not simultaneously hold positions in different departments of the government. The dual service issue in *Elliott* arose because a justice of the peace, who was also employed in the state's engineering department, sued the county treasurer for his engineer's salary.[54] Although the court stated that separation of powers "means that no person shall hold offices under different departments of the government at the same time," the court expressly found the issue beyond its reach, explaining that "quo warranto is the proper remedy by which directly to test the title to all public offices" and "that the title to an office cannot be tested in a proceeding for the writ of mandate."[55] Consequently, the court affirmed the trial court's issuance of mandamus relief, compelling payment of the justice's salary.

---

[51]88 Nev. 542, 501 P.2d 1032 (1972).

[52]80 Nev. 588, 591, 397 P.2d 466, 467-68 (1964) (holding that, because the United States Constitution reserves to the U.S. Senate the exclusive power to judge members' qualifications, this court could not consider an election contest for a U.S. Senate seat).

[53]247 P. 523 (Cal. Ct. App. 1926).

[54]*Id.*

[55]*Id.* at 524 (internal quotation marks omitted).

The only areas in which a court may act with respect to the "qualifications, elections and returns" of legislators are where the legislature has (1) devised a role for the courts by statute, such as election contests,[56] (2) infringed upon personal constitutional rights,[57] or (3) imposed extra-constitutional qualifications.[58] This last area has been traversed by the United States Supreme Court in view of the Federal Constitution's proclamation that "[e]ach House shall be the Judge of the Elections, Returns and Qualifications of its own Members."[59] In *Powell v. McCormack*,[60] the Supreme Court held that Congress is the sole judge of whether an elected official meets qualifications enumerated in the Constitution, but not when Congress imposes extra-constitutional qualifications. The House of Representatives had passed a resolution barring Adam Clayton Powell, Jr., from resuming his congressional seat based on a report that he had deceived authorities regarding travel expenses and had directed illegal salary payments to his wife.[61] The Supreme Court concluded that it could review the matter without violating separation of powers because the Framers intended to insulate from judicial review only those qualifications expressly prescribed in the Constitution.[62] Thus, as Powell satisfied the Constitution's requirements for membership,[63] the Court found Powell eligible for his congressional seat. Narrowly construing Congress' power to exclude elected members was important to the Court in light of the "fundamental principle of our representative democracy . . .

[56]*Scheibel,* 282 N.W.2d at 848, 850; *e.g.,* NRS 293.407 (allowing election contests not involving state senators or assemblypersons to be brought in district court); *cf.* NRS 293.182(4) (authorizing judicial review over challenges to a candidate's qualifications).

[57]*E.g., Bond v. Floyd,* 385 U.S. 116, 129 (1966) (reviewing legislator's claim of a First Amendment violation from the Georgia House of Representative's refusal to admit him based on his criticism of the Vietnam war, notwithstanding a state constitutional proviso that "[e]ach House shall be the judge of the election, returns, and qualifications of its members").

[58]*E.g., Powell v. McCormack,* 395 U.S. 486 (1969); *see Hayden,* 222 Cal. Rptr. at 516 (stating that judicial review is available to protect First Amendment rights and eliminate qualifications imposed without textual support in the Federal Constitution).

[59]U.S. Const. art. I, § 5.

[60]395 U.S. 486, 548 (1969); *see also id.* at 551 (Douglas, J., concurring).

[61]395 U.S. at 489-90.

[62]*Id.* at 522.

[63]*See* U.S. Const. art. I, § 2, cl. 2 ("No Person shall be a Representative who shall not have attained to the age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen.").

'that the people should choose whom they please to govern them.' "[64]

In the instant case, the Nevada Legislature has not crafted a role for the judiciary in reviewing current members' qualifications.[65] Indeed, by statute, election contests for state assembly or senate seats may not be brought in a court, and may be filed only with the Secretary of State,[66] who must then deliver the contest documents to "the appropriate house of the Legislature."[67] Further, no legislator is claiming that his or her right to sit has been unconstitutionally denied. Nevertheless, the Secretary asks this court to judge legislators' qualifications based on their executive branch employment. This request runs afoul of the separation of powers and is not justiciable.

## III.

### The proper forum and parties for the dual service issue

As discussed above, any attempt through a judicial proceeding to exclude or oust executive branch employees from the Legislature is barred by the separation of powers. But the dual service issue may be raised as a separation-of-powers challenge to legislators working in the executive branch, as the qualifications of legislators employed in the executive branch are not constitutionally reserved to that branch.[68] Such a challenge might be well-suited for a quo warranto or a declaratory relief action filed in the district court. A quo warranto action could be used to challenge any executive branch employees invested with sovereign power, who thereby occupy public offices within quo warranto's exclusive reach.[69] And declaratory relief, possibly coupled with a request for injunctive relief, could be sought against other executive branch employees.

The party with the clearest standing to bring the quo warranto action would be the attorney general,[70] and declaratory relief could

[64]*Powell,* 395 U.S. at 547 (quoting Alexander Hamilton's pronouncement recited in 2 *Elliot's Debates* 257).

[65]And even if the Legislature had crafted such a role for this court, there might be an issue as to whether the Legislature had unconstitutionally delegated its power. *See, e.g., In re McGee,* 226 P.2d 1, 5 (Cal. 1951).

[66]NRS 293.407(2); NRS 293.425.

[67]NRS 293.427(1).

[68]*See, e.g., State ex rel. Spire v. Conway,* 472 N.W.2d 403, 408 (Neb. 1991); *State v. Evans,* 735 P.2d 29, 33 (Utah 1987).

[69]*See St. ex rel. Mathews v. Murray,* 70 Nev. 116, 120-21, 258 P.2d 982, 985 (1953) (dismissing quo warranto proceeding brought to determine whether state senator could work as director of driver's license division because director was not "invested with some portion of the sovereign functions of government").

[70]NRS 35.040.

be sought by someone with a "legally protectible interest,"[71] such as a person seeking the executive branch position held by the legislator. Individual legislators would need to be named as either quo warranto respondents or declaratory relief defendants.[72]

## CONCLUSION

Separation of powers ensures the proper balance between coordinate branches of government.[73] Because the Secretary's request to exclude or oust executive branch employees from legislative service would have us disrupt that balance by intruding upon the Senate and Assembly's constitutionally reserved right to judge their members' qualifications, we must deny relief. The numerous and substantial other infirmities that plague the Secretary's writ petition only further preclude our intervention. Accordingly, we deny the petition for a writ of mandamus.

---

[71]*Knittle v. Progressive Casualty Ins. Co.,* 112 Nev. 8, 10, 908 P.2d 724, 725 (1996) (quotation omitted).

[72]NRS 35.010(1) (stating that a quo warranto action may be brought against "a person who usurps, intrudes into, or unlawfully holds or exercises, a public office"); NRS 30.130 ("When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights or persons not parties to the proceeding.").

[73]*Nixon v. Administrator of General Services,* 433 U.S. 425, 443 (1977).