135 Nev., Advance Opinion 53

IN THE SUPREME COURT OF THE STATE OF NEVADA

THE STATE OF NEVADA BOARD OF
PAROLE COMMISSIONERS,
Petitioner,
vs.
THE SECOND JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
WASHOE; AND THE HONORABLE
CONNIE J. STEINHEIMER, DISTRICT
JUDGE,
Respondents,
and
MARLIN THOMPSON,
Real Party in Interest.

No. 76024

FILED

OCT 24 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK



Original petition for a writ of mandamus challenging a district court order denying a petition filed by the Nevada Board of Parole Commissioners pursuant to NRS 176.033(2).

*Petition granted.*

Aaron D. Ford, Attorney General, and Kathleen M. Brady, Deputy Attorney General, Carson City,
for Petitioner.

Aaron D. Ford, Attorney General, Theresa Haar, Senior Deputy Attorney General, and Tiffany E. Breinig, Deputy Attorney General, Carson City,
for Respondents.

Marlin Thompson, Yerington,
in Pro Se.

19-43935

Christopher Hicks, District Attorney, and Jennifer P. Noble, Chief Appellate Deputy District Attorney, and Marilee Cate, Deputy District Attorney, Washoe County,
for Amicus Curiae Washoe County District Attorney.

BEFORE THE COURT EN BANC.

## OPINION

By the Court, CADISH, J.:

The Nevada Board of Parole Commissioners currently has authority under NRS 176.033(2) to ask the district court to modify a parolee's sentence after the parolee has served a specified amount of time on parole.[1] If the district court determines there is good cause after hearing the Parole Board's recommendation, the court may reduce the parolee's sentence to not less than the minimum provided by the applicable penal statute. The primary question presented by this original proceeding is this: What is the minimum term or limit for purposes of NRS 176.033(2) when the applicable penal statute only provided for a life sentence either with or without the possibility of parole? We conclude that in that circumstance, the parole eligibility term prescribed by the penal statute sets the limit for reducing the life sentence under NRS 176.033(2). Because the district court relied on a misunderstanding of the law in denying the Parole Board's

---

[1]In passing A.B. 236, 80th Leg. (Nev. 2019), the Legislature recently amended the statute to remove the Parole Board's authority in this respect, effective July 1, 2020. 2019 Nev. Stat., ch. 633, §§ 10.5, 137, at 4381-82, 4488. Given the effective date, that amendment does not apply here.

petition under NRS 176.033(2), we grant the Parole Board's petition for a writ of mandamus.

## FACTS AND PROCEDURAL HISTORY

In 1979, Marlin Thompson was sentenced to a term of 15 years for attempted murder, to run consecutive with a term of life with the possibility of parole for the crime of first-degree murder. Thompson was granted parole on the life sentence in January 1990 and on the attempted-murder sentence in 1992. He was released from prison in July 1992 and has remained on parole since that time.

On September 11, 2017, pursuant to NRS 176.033(2), the Parole Board filed a petition for modification of Thompson's sentence. The Washoe County District Attorney's Office opposed the petition, arguing that the minimum term for first-degree murder prescribed by NRS 200.030 at the time of Thompson's offense was a life term because the statute only permitted life sentences and therefore the court could not reduce Thompson's maximum term. The district court agreed with the District Attorney's Office and denied the Parole Board's petition. Subsequently, the Parole Board filed a notice of appeal from the district court's order, as well as a petition for a writ of mandamus challenging the district court's decision. Having dismissed the appeal for lack of jurisdiction, *Bd. of Parole Comm'rs v. State*, Docket No. 75799 (Order Dismissing Appeal, October 12, 2018), we now consider whether to entertain the mandamus petition.

## DISCUSSION

A writ of mandamus is available to compel the performance of an act that the law requires or to control an arbitrary or capricious exercise of discretion. NRS 34.160; *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008); *see also Humphries v. Eighth Judicial Dist. Court*, 129 Nev. 788, 791, 312 P.3d 484, 486 (2013).

Whether a mandamus petition will be considered is within our sole discretion. *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991); *see also Libby v. Eighth Judicial Dist. Court*, 130 Nev. 359, 363, 325 P.3d 1276, 1278 (2014). Before deciding whether to exercise that discretion, we consider respondents'[2] argument that we should deny the petition because the Parole Board lacks standing to request a writ of mandamus.

*The Parole Board has standing*

Respondents argue that the Parole Board lacks standing to pursue this writ petition because it does not have a beneficial interest in the relief sought. We disagree.

"To establish standing in a mandamus proceeding, the petitioner must demonstrate a 'beneficial interest' in obtaining writ relief." *Heller v. Nev. State Leg.*, 120 Nev. 456, 460-61, 93 P.3d 746, 749 (2004). A beneficial interest is "a direct and substantial interest that falls within the zone of interests to be protected by the legal duty asserted." *Id.* at 461, 93 P.3d at 749 (quoting *Lindelli v. Town of San Anselmo*, 4 Cal. Rptr. 3d 453, 461 (Ct. App. 2003)). In other words, if a petitioner will gain no direct benefit from the writ's issuance and suffer no direct detriment from its denial, then the petition should be denied. *Id.*

Here, the Parole Board has a beneficial interest. NRS 176.033(2) specifically authorizes the Parole Board to petition the district court to modify a parolee's sentence and thereby reduce the time that the

---

[2]We note that both petitioner and respondents are represented by attorneys in the office of the Nevada Attorney General. At oral argument, they represented that proper screening mechanisms were implemented and any conflicts of interest were waived by their respective clients.

parolee will be supervised. The Parole Board therefore has an interest in how that provision is interpreted and whether its request under the statute is granted or denied. Because the Parole Board has demonstrated a beneficial interest, we decline to dismiss the petition for lack of standing. Accordingly, we must decide whether mandamus is available as a remedy and whether to exercise our discretion in this matter.

*The Parole Board has no other adequate remedy and has presented a question of law that warrants this court's consideration*

As a general rule, mandamus is not available when the petitioner has a plain, speedy, and adequate remedy in the ordinary course of law. NRS 34.170; *Pan v. Eighth Judicial Dist. Court*, 120 Nev. 222, 224, 88 P.3d 840, 841 (2004). Although the right to appeal "is generally an adequate legal remedy that precludes writ relief," *Pan*, 120 Nev. at 224, 88 P.3d at 841, the Parole Board had no right to appeal from the district court's order in this matter, as indicated in our order dismissing the Parole Board's appeal for lack of jurisdiction. *Bd. of Parole Comm'rs v. State*, Docket No. 75799 (Order Dismissing Appeal, October 12, 2018). Respondents, however, suggest that another remedy is available—an application to the State Board of Pardons Commissioners. The Pardons Board has authority to commute Thompson's sentence such that he would no longer be subject to supervision as a parolee, achieving the result that the Parole Board sought in filing its petition under NRS 176.033(2). But the Pardons Board cannot answer the legal question presented in this matter, as that is a matter for the courts. *Compare* Nev. Const. art. 5, § 14 (providing that the Pardons Board may grant a request to have a fine or forfeiture remitted, a punishment commuted, a pardon granted with certain exceptions), *with* Nev. Const. art. 6, § 1 (providing that "judicial power of this State is vested in a court system, comprising a Supreme Court, a court of appeals, district courts and justices

of the peace" and municipal courts established by the Legislature), *and N. Lake Tahoe Fire Prot. Dist. v. Washoe Cty. Bd. of Cty. Comm'rs*, 129 Nev. 682, 687, 310 P.3d 583, 587 (2013) (describing "judicial power" as the authority to hear and determine justiciable controversies and to declare what the law is or has been). But more significantly, an application to the Pardons Board seeks an act of extraordinary grace. We therefore are not convinced that an application to the Pardons Board provides a "remedy in the ordinary course of law" as contemplated by NRS 34.170. Because the Parole Board does not have a plain, speedy, and adequate legal remedy, mandamus is available as a remedy.

Even though mandamus is available as a remedy, the decision whether to entertain the Parole Board's petition on the merits remains a matter within this court's discretion. *See State, Dep't of Transp. v. Thompson*, 99 Nev. 358, 361, 662 P.2d 1338, 1340 (1983) (explaining that "a petitioner is never 'entitled' to a writ of mandamus" because "it is purely discretionary"). We elect to exercise that discretion here because the petition presents a pure question of law that is of statewide significance. *See Round Hill Gen. Improvement Dist. v. Newman*, 97 Nev. 601, 604, 637 P.2d 534, 536 (1981) (explaining that this court's discretion "to entertain a petition for a writ of mandamus when important public interests are involved will not be exercised unless legal, rather than factual, issues are presented" (citation omitted)).

*The version of NRS 176.033(2) in effect when the Parole Board filed its petition applies in this case*

Before we can interpret the language in NRS 176.033(2) to answer the legal question presented, we must determine which version of the statute applies. The parties express some disagreement on that matter, with respondents suggesting that the version of the statute in effect at the

time of Thompson's offense in 1978 applies, and the Parole Board pointing to the 1987 version of the statute in effect before it was amended in 1995. Because the Parole Board petitioned for modification in 2017, the parties also addressed whether the 1995 amendments apply. Based on the following analysis, however, we agree with the Parole Board.

When it was adopted in 1975, the provision that later became NRS 176.033(2) authorized the Parole Board to file a petition asking the district court to modify a sentence "at any time after a parolee has served one-half of the period of his parole" by "reducing the term of imprisonment" to no "less than any minimum term prescribed by the applicable penal statute." 1975 Nev. Stat., ch. 435, § 1, at 653 (codified as NRS 176.033(3)). At the time, the provision seemingly excluded individuals who had been released on parole from a life sentence, given the difficulty in calculating "one-half" of a lifetime period of parole. *See* Hearing on A.B. 560 Before the Senate Comm. on Judiciary, 64th Leg., at 11-13 (Nev. May 6, 1987) (testimony of representative from Department of Parole and Probation). With that situation in mind, the Legislature amended the statute in 1987 to include parolees who had been paroled from a life sentence and served 10 consecutive years on parole. 1987 Nev. Stat., ch. 174, § 1, at 396. At that point, including technical amendments passed in 1977, the statute provided:

> At any time after a prisoner has been released on parole and has served one-half of the period of his parole, or 10 consecutive years on parole in the case of a prisoner sentenced to life imprisonment, the state board of parole commissioners, upon the recommendation of the department of parole and probation, may petition the court of original jurisdiction requesting a modification of sentence. The board shall give notice of the petition and

hearing thereon to the attorney general or district attorney who had jurisdiction in the original proceedings. Upon hearing the recommendation of the state board of parole commissioners and good cause appearing, the court may modify the original sentence by reducing the term of imprisonment but shall not make the term less than the minimum limit prescribed by the applicable penal statute.

1987 Nev. Stat., ch. 174, § 1, at 396. When the Legislature overhauled the approach to sentencing in 1995, it made conforming amendments to the final sentence in NRS 176.033(2) to refer to the "maximum" and "minimum" terms of imprisonment: "Upon hearing the recommendation of the state board of parole commissioners and good cause appearing, the court may modify the original sentence by reducing the *maximum* term of imprisonment but shall not make the term less than the minimum [limit] *term* prescribed by the applicable penal statute." 1995 Nev. Stat., ch. 443, § 205, at 1248 (repealed language shown in brackets and new language shown in italics).

If the 1975 version of the statute applies here, Thompson's life sentence could not be modified regardless of whether the applicable penal statute provided for a minimum less than life. That is because, as indicated above, the statute originally applied only to parolees who had served "one-half" of their period of parole, a condition that could not be met by a parolee facing a lifetime period of parole. It was not until the 1987 amendment that NRS 176.033(2) addressed the circumstances in which the Parole Board could petition to modify the sentence of a parolee facing a lifetime period of parole—after the parolee had served 10 consecutive years on parole.

The Legislature did not expressly tie the 1987 amendments' effective date to the date of a parolee's offense, and the statute's plain language indicates the 1987 amendments were not so limited. Since the

provision's adoption in 1975, its plain language has focused on the amount of time served on parole as the event that triggers the Parole Board's authority to file a petition. That did not change with the 1987 amendments. The triggering event thus has nothing to do with the date the offense was committed; instead, it is focused on events occurring long after the offense. And the statute has always provided that the Parole Board may petition the court "[a]t any time after" the triggering event. 1975 Nev. Stat., ch. 435, § 1, at 653 (codified as NRS 176.033(3)). As a whole, this language indicates the Legislature intended to afford the Parole Board discretion to seek a sentence modification for any parolee who had served the requisite time on parole, regardless of when the offense was committed.[3]

The Legislature's intent with respect to the effective date of the 1995 amendments to NRS 176.033(2) is less clear. In particular, the 1995 legislation included two effective-date provisions for the section that amended NRS 176.033(2), one stating the amendments did not apply to offenses committed before July 1, 1995, and the other stating that the amendments became effective on July 1, 1995. 1995 Nev. Stat., ch. 443, §§ 393, 394, at 1340 (referring to section 205, which amended subsections 1 and 2 of NRS 176.033). It appears the Legislature was trying to ensure that the comprehensive amendments to sentencing provisions included in the 1995 legislation did not apply to offenses committed before the legislation's effective date. That would be consistent with the general rule that "the proper penalty is the penalty in effect at the time of the commission of the

---

[3]We conclude that the general rule regarding retroactivity of ameliorative sentencing amendments, *see generally State v. Second Judicial Dist. Court (Pullin)*, 124 Nev. 564, 188 P.3d 1079 (2008), does not apply here because NRS 176.033(2) has nothing to do with the original sentencing determination.

offense." *Pullin*, 124 Nev. at 567, 188 P.3d at 1081. Because the 1995 amendments to NRS 176.033(2) were solely to conform its language to the new sentencing scheme adopted at the same time and that sentencing scheme did not apply to offenses committed before July 1, 1995, we conclude that the 1995 amendments to NRS 176.033(2) do not apply here. Having concluded the 1987 version of the statute applies, we turn to the legal question presented: whether the district court could reduce Thompson's sentence to less than life.

*Life sentences may be modified pursuant to NRS 176.033(2) (1987) to a sentence not less than the minimum parole eligibility prescribed by the applicable penal statute*

"Statutory interpretation is a question of law that we review de novo, even in the context of a writ petition." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 198, 179 P.3d 556, 559 (2008). "[W]hen 'the language of a statute is plain and unambiguous, and its meaning clear and unmistakable,'" this court must give effect to that plain meaning as an expression of legislative intent without searching for "'meaning beyond the statute itself.'" *Dykema v. Del Webb Cmtys., Inc.*, 132 Nev. 823, 826, 385 P.3d 977, 979 (2016) (quoting *Nelson v. Heer*, 123 Nev. 217, 224, 163 P.3d 420, 425 (2007)). But when the statute is ambiguous, meaning that it is subject to more than one reasonable interpretation, this court may look to interpretive aids such as legislative history and "the context and the spirit of the law or the causes which induced the [L]egislature to enact it." *Id.* (alteration in original) (quoting *Torres v. Nev. Direct Ins. Co.*, 131 Nev. 531, 535, 353 P.3d 1203, 1206-07 (2015)).

Respondents argue that Thompson's sentence cannot be reduced because the applicable sentencing statute did not provide a minimum sentence, only a maximum limit of life. Under that

interpretation, a life sentence could not be modified under NRS 176.033(2) in a case like this where no sentence less than life, either with or without parole, was available. However, such interpretation would render the 1987 amendments largely nugatory, as the Parole Board could file a petition to modify a life sentence, but the district court would not be able to grant it. Thus, we respectfully disagree with respondents' conclusion.

Here, the language of the statute is ambiguous as to the meaning of "minimum limit" in this context. Consequently, we look to the legislative history and purpose behind NRS 176.033(2) to assist in determining the Legislature's intent. The purpose of the amendment to the statute proposed by the Department of Parole and Probation in 1987 was to clarify whether it had to supervise a parolee serving a life sentence for the rest of his life without exception. That legislative history demonstrates that, by passing the 1987 amendment, the Legislature intended to allow the Parole Board to seek a modification of a parolee's life sentence under NRS 176.033(2). It necessarily follows that the Legislature intended to allow the district court to reduce a parolee's life sentence. In light of the legislative history, we conclude that when the penal statute provides for a life sentence with the possibility of parole and specifies a period of time that must be served before parole eligibility, the district court has authority under NRS 176.033(2) to reduce the life sentence to not less than the period specified for parole eligibility. The Parole Board would be able to petition for such a reduction only after the parolee has served 10 consecutive years on parole. In this case, these requirements have been met, and the district court has the authority to reduce Thompson's life sentence in accordance with NRS 176.033(2). Because the district court misapplied the law, we grant the petition. *See State v. Eighth Judicial District Court (Armstrong)*, 127 Nev.

SUPREME COURT
OF
NEVADA

(O) 1947A

11

927, 932, 267 P.3d 777, 780 (2011) (defining manifest abuse of discretion warranting mandamus relief). Accordingly, we direct the clerk of this court to issue a writ of mandamus directing the district court to vacate its order and reconsider the Parole Board's petition consistent with this opinion.

_____, J.
Cadish

We concur:

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Silver